James Ready et al., Appellees, v. Thomas Ready et al., Appellants.

George B. Davis, Appellant, v. James Ready et al., Appellees.

Eugene E. O'Heron et al., Appellants, v. Thomas Ready et al., Appellants.

Gen. No. 9,335.

Opinion filed April 20, 1939.

OSCAR R. LARAWAY and BARR & BARR, both of Joliet, for appellants.

WISE, DUFFY & WISE, of Joliet, for appellees.

MR. JUSTICE WOLFE delivered the opinion of the court.

On July 11, 1930, John P. Loughnane and Alfred J. Stoos, as trustees, filed a bill of complaint in the circuit court of Will county to foreclose a trust deed dated June 1, 1927, to secure the payment of certain notes of the same date aggregating $5,000. On November 13, 1930, the Will County National Bank, through its officers, filed its answer denying the execution of the notes in question. On November 15, 1930, George B. Davis, who is also a party to the suit, filed his answer and denied that the complainants were entitled to any relief as stated in their bill of complaint. On December 3, 1930, George B. Davis filed a cross-bill, and alleged among other things that on

March 15, 1929, he had become the owner of the premises involved, subject to a lien of a trust deed dated March 15, 1925, running to the Will County National Bank to secure the payment of $5,500. The plaintiff filed an answer to the cross-bill of George B. Davis and denied the material allegations therein. On May 1, 1933, the Will County National Bank, through its proper officers, filed its cross-bill in the same proceeding and sought to foreclose a mortgage executed on March 15, 1925, by the owners of the premises in question for the sum of $5,500. They claim that their mortgage was the first lien on the premises in question. The complainants filed an answer to this cross-bill and denied that the bank was entitled to the relief as sought. On July 2, 1935, the Will County National Bank amended its answer to the original complaint, and claimed that the money secured by their mortgage was used for the purpose of improving the property and had greatly enhanced the value thereof, and this was done with the full knowledge of the complainants in the original bill. The case was heard before the court without a jury. The court found the issues in favor of the complainants and entered a decree of foreclosure.

The facts as disclosed by the record are: Prior to the year 1905, William Ready, who had been in extremely poor health since his birth, and who was then 15 or 16 years of age, was sent to the western part of the United States, for his health. To enable William to make this trip, and to allow him to have means on which to live, James Ready loaned him money aggregating about $2,500 or $3,000. He also advanced William Ready other money to enable William to come back to Illinois for his mother's funeral, and to return to the West.

James Ready purchased from his father the homestead farm property located near Odell, Illinois, in the

year 1913, paying for the same partly in cash and partly by mortgage notes. It was customary for the Ready family to meet every year on or about November 1, to have James give an account to the family for the interest due on this purchase money mortgage. William also returned from the West each year and it was also customary for him to make an accounting to James, each November 1, of the moneys he had borrowed. James took a note each time representing the principal due from William, plus any accrual of interest up to the time of his taking such note.

The father, Patrick L. Ready, wishing to divide his estate among his children before his death, did so about November 1, 1923, giving William $6,000 cash, Thomas $5,500 in cash, and giving to his other children various amounts. A substantial portion of Thomas' money was paid to local storekeepers in Odell for debts. He received only $2,000 or $3,000 after his debts were paid.

Thomas Ready borrowed $500 from the First National Bank of Joliet, and which he used in June, 1923, to apply on the purchase of the real estate in question, which was then improved with a dwelling house. William Ready, on November 17, 1923, loaned Thomas Ready and Julia Ready, his wife, the sum of $5,000, $500 of which sum was used to repay Thomas' personal loan at the First National Bank of Joliet, and the balance of $4,500 was used to complete the purchase of the real estate from Esther Davies and William T. Davies, the owners of said real estate. On the same date, November 17, 1923, Thomas and Julia Ready executed their 10 trust deed notes, aggregating $5,000, and their trust deed securing the same, which notes and trust deed were delivered to William Ready as consideration for his loan to Thomas. This trust deed was executed November 17, 1923, and recorded February 18, 1924.

In May, 1926, Thomas and Julia Ready made application to the Woodruff Securities Company for a loan of $1,500 to be secured by a mortgage on said real estate, and the application was granted on condition that William Ready would release his $5,000 first mortgage lien. To this William consented and on May 27, 1926, Thomas and Julia Ready executed their two principal notes in the aggregate principal sum of $1,500 and secured the same by a trust deed of even date, which was recorded June 3, 1926.

The release of William Ready's $5,000 trust deed was executed by the trustee therein named on the same date, June 3, 1926 and recorded on June 3, 1926. On June 4, 1926 Thomas and Julia Ready, for the purpose of securing their indebtedness to William Ready, executed and delivered to Alfred J. Stoos, trustee, their five principal promissory notes aggregating $5,000 and a trust deed securing the same, said trust deed stating upon its face the fact that it was subject to the prior indebtedness of $1,500, and each of the notes bearing the indorsement: "This Mortgage is a Junior Mortgage." These trust deed notes, although executed on June 4, 1926, bore date of November 17, 1923 (the same date as the original notes held and owned by William Ready), and bore due date of November 17, 1928 (being the due date of the original notes held and owned by said William Ready).

On or prior to June 1, 1927, Thomas and Julia Ready again made further application to the Woodruff Securities Company, through Mr. Stoos for an additional loan of $1,500 and were again advised that such loan could be made if William Ready would subordinate his $5,000 mortgage. William again consented, and accordingly on June 1, 1927, Thomas and Julia Ready executed their trust deed of that date to the First National Bank of Joliet, trustee, securing their five notes in the aggregate principal sum of $3,000, said

trust deed being recorded July 18, 1927. On the same date, June 1, 1927, Thomas and Julia Ready executed and delivered to Alfred J. Stoos, trustee, their trust deed bearing said date, securing their five principal notes of that date in the aggregate principal sum of $5,000. These notes were delivered to William Ready by said Alfred J. Stoos at the time he surrendered his other notes. He took the notes home with him, but did not receive the trust deed securing same until the latter part of 1929 or the first part of 1930. This trust deed was recorded July 20, 1927, and the releases of the original $1,500 first mortgage owned by the Woodruff Securities Company and of the $5,000 second mortgage formerly held by William Ready were both recorded July 18, 1927.

The notes and trust deed dated June 1, 1927 in the aggregate principal sum of $5,000 are the ones foreclosed in favor of James Ready by the decree of court below. These notes secured by said trust deed dated June 1, 1927 bear due date of November 17, A. D. 1930, the same due date having been carried through in all of these transactions in so far as the trust deeds and notes executed by Thomas and Julia Ready to secure William Ready are concerned, with the exception that the latter notes bear due date of November 17, 1930, rather than November 17, 1928.

James Ready on or about November 1, 1927 had his annual accounting with his brother William for the moneys that William owed him and, as was customary, took a note from William for the full amount of principal plus accrued interest to the date of the execution of the note, demanded of William security for his note, and William at that time turned over and delivered to James the $5,000 in trust deed notes dated June 1, 1927, which were the notes secured by the trust deed foreclosed by decree of court below in favor of James Ready. James Ready remonstrated with William at

the time he received these mortgage notes because he had understood that he was always to be secured by a first mortgage. The evidence shows that when he received these mortgage notes and discovered they were marked "This Is a Junior Mortgage," he scolded William and asked him "Why in the hell didn't you tell me that you changed that mortgage?" Thereafter a strained relationship existed between William and James and also between James on the one hand and Thomas Ready and Julia Ready, his wife, on the other.

On or about July 1, 1928 the buildings on the premises were destroyed by fire and the sum of $4,728.74 was paid by the insurance company by draft, payable to Thomas Ready, The First National Bank of Joliet, and William Ready. From this money the First National Bank received on July 27, 1928 the sum of $3,030 in payment of its first mortgage notes and accrued interest thereon dated June 1, 1927. A release of the trust deed securing the $3,000 notes owned by the First National Bank was filed for record on September 18, 1928.

William Ready, who was named as one of the payees in the insurance company check at the request of his brother Thomas and, having no further interest in the trust deed notes then held and owned by James Ready, indorsed said insurance company check and allowed the full proceeds thereof, less the money paid the Woodruff Securities Company for the First National Bank, to be taken by Thomas and Julia Ready. The balance of insurance moneys received by Thomas and Julia Ready because of the fire consisted in the proceeds of policies covering their household furniture, etc.

James Ready, during all of this time, was a resident of Chicago, Illinois, and he states that the only cause for any visits which he made to Joliet, was to see his aged father, Patrick L. Ready, who was living in

Joliet with Thomas and Julia Ready, and who was then and had been for some time totally blind and partially deaf. Patrick L. Ready died on January 14, 1930 at the age of 96 or 97.

During the latter part of February or the first part of March, 1929, George B. Davis, appellant herein, a contractor in Joliet, Illinois, approached Thomas and Julia Ready in regard to rebuilding or replacing the residence destroyed by fire and submitted plans to them for the construction of a home, agreeing to make all arrangements for the financing of the building. He was advised by Thomas and Julia Ready that the lot was clear. They believed that the $5,000 note and trust deed had been paid due to the destruction of the buildings, and was no longer a lien. However, George B. Davis procured from them an abstract of title to the premises in question, and on March 15, 1929, brought Thomas and Julia Ready to the office of Howard Wilson, a loaning agent for the Will County National Bank and had them execute a trust deed and 11 notes dated March 15, 1929, for the aggregate principal of $5,500. He also had them execute 60 trust deed notes in the aggregate sum of $2,200 and a trust deed securing the same, dated March 15, 1929, which $2,200 trust deed notes were subject to said $5,500 trust deed. He also had them execute a warranty deed conveying the property to him and gave them in return a contract to repurchase. Howard Wilson as loaning agent for the Will County National Bank disbursed the $5,500 in the rebuilding of the dwelling. He delivered the $5,500 trust deed and notes to the Will County National Bank and they were sold by said bank to Mike Nickel, et al., appellant noteholders. The abstract to the premises in question had been delivered by George B. Davis to Howard Wilson who had a continuation made by the Will County Title Company. The abstract showed the $5,000 trust deed or mortgage lien of James Ready.

This abstract was not examined by Mr. Wilson or by anyone for him or by anyone for the Will County National Bank until after this suit was filed in the court below.

On or about November 1, 1929, James Ready demanded from and received from William Ready a new note, dated November 1, 1929, evidencing William's indebtedness to him, both as to principal and interest, up to the date of the execution of said note, and said note in the sum of $6,618.30 was delivered to James by William. On January 29, 1930 James Ready demanded from William the trust deed securing the $5,000 trust deed notes which he held and owned. The same was delivered to him and he gave William Ready credit for $5,800, being $5,000 principal and $800 interest then due on said trust deed notes. This credit was indorsed January 29, 1930, on William's note of $6,618.30.

In the latter part of 1929 or the first part of 1930, it was discovered by Mr. Wilson that the $5,500 trust deed executed on March 15, 1929 was a junior incumbrance and was subject to the lien of James Ready's $5,000 trust deed. James Ready as stated in appellants' brief, filed his bill of complaint to foreclose the trust deed dated June 1, 1927.

By the terms of the decree the cross complaint of George B. Davis was dismissed for want of equity; the defendants were allowed 30 days in which to pay the amount due James Ready—$9,228.24, and the amounts due appellants aggregating—$7,925.17, and costs. In default of payment the master was directed to sell the property incumbered by the trust deeds and out of the proceeds of the sale, James Ready was to be first paid, and if anything remained then the cross complainants, Mike Nickel, et al., were to be paid. The appellants herein appealed from this decree and an

order was entered in this cause approving the appeal bond and granting supersedeas.

The assignments of error of appellant are grouped in three classes, the first being, ''The court erred in not finding that the interested parties at all times intended and agreed that the trust deed in this case, foreclosed on behalf of James Ready, as a first mortgage as his mortgage was junior to any other indebtedness in the premises involved, and to the indebtedness and mortgage of Mike Nickel et al., secured by trust deed of March 15, 1929.''

It is undisputed that the mortgage held by James Ready was for money which he had loaned his brother; that Thomas Ready and wife executed the notes and mortgage on the day that they bear date and that the mortgage showed on its face it was a junior mortgage subject to an indebtedness to the bank and that all parties concerned considered it a junior mortgage for that purpose, but for that purpose alone. It is also uncontradicted that the mortgage to the bank was paid off and a release deed was given and filed in the recorder's office in Will county, showing that the same had been canceled and the indebtedness secured by the mortgage had been fully paid. It seems to us that there is no question but that as soon as this mortgage indebtedness had been paid and released of record, that the mortgage of the complainant would become a first mortgage and lien, and regardless of who were the owners or holders of notes of a later mortgage, they could not have a lien that would be prior to the mortgage in question. Complainants' trust deed was a matter of record which anyone could see. The evidence shows that before Thomas Ready and his wife borrowed the money to build the new house, they furnished an abstract showing the title to the premises. This abstract also showed that William Ready had a

mortgage on the premises which was duly recorded. The officers of the bank who made the mortgage, for some reason did not see fit to examine or have the abstract examined to ascertain whether Thomas Ready and his wife had a clear title to the lot in question. Under the circumstances, we can find nothing in the record that would prevent the complainants' trust deed being a first trust deed and a prior lien to the lien of the bank.

It is next insisted that, ''The court erred in not finding that James Ready was estopped from claiming that his trust deed was superior to the lien of appellants, Mike Nickel, et al., and also erred in not finding that James Ready waived his right to claim that the trust foreclosed on his behalf was a first and prior lien.'' We do not find any merit in this contention, as there is nothing in the record to show that James Ready did anything, that should bar him from foreclosing his lien. In the pleadings it was contended, that there was fraud and collusion between the Readys, to have this mortgage on record as showing the indebtedness more than it really was. The evidence does not sustain that contention. It is clearly established that James Ready paid full value for the notes and trust deed in question; that he settled with his brother after buying his father's estate; that William was indebted to him in excess of $6,000; that William settled with James by giving him the note and trust deed in question and the amount of face of the note together with $800 interest was credited on William's note to James. From that time on James had possession of the notes, but did not have the trust deed until about two years later. We can see no taint of fraud in any of the transactions between James and the others.

We think the evidence sustains James' contention that he was not aware of the new house being built until after it was erected, and did not know who fur-

nished the money to Thomas Ready and his wife to build a new house. If he had known it, it would make no difference. He had a trust deed for which he paid full value, and it was a matter of record. Anyone who was interested could have found it. We find nothing in this record that should estop James Ready from foreclosing his trust deed.

It is lastly contended that the decree is contrary to the manifest weight of the evidence. What we have said in discussing the other two assignments of error, is applicable under this one. The real trouble in the case grows out of the fact that in some way the examination of the abstract of title was overlooked by the parties making the $5,500 loan before it was granted. There was a failure to examine either the abstract of title or the records for liens. The recording of a trust deed is constructive notice and is as effectual as actual notice to preclude recovery for improvements placed on mortgage premises, after the execution of the mortgage. Such improvements inure to the benefit of the mortgagee; and while it is a hardship upon the holders of the notes of the second deed of trust to lose their money, it is due to their carelessness and negligence in not examining the records, which were open for their inspection, that their loss occurs. It would be just as great a hardship on James Ready if he should lose his money, which he invested in good faith, and who took the precaution to see that his trust deed was duly recorded. The evidence in the case fully sustains the findings of the court that James Ready was a holder in due course of the notes and trust deed in question, and that the same is a first lien on the mortgaged premises.

The judgment of the trial court is hereby affirmed.

*Affirmed.*