In re Robert Allen **STOCKWELL** Roberta June Stockwell, Debtors.

**Bankruptcy No. 383–02134.**

United States Bankruptcy Court, D. Oregon.

Sept. 21, 1983.

6. The debtor's motion for attorney's fees is    denied.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

On August 4, 1983, this matter came before the court for a hearing upon confirmation. The debtors appeared by their attorney, John Durkheimer and the Internal Revenue Service appeared by Herbert Sundby, Assistant United States Attorney.

From the representations of counsel it appears that the debtors have a tax liability to the IRS of approximately $55,000. This debt is at least partially, if not fully, secured by liens upon three parcels of real property of the debtors.

The debtors' plan makes no provision for monthly payments by the trustee upon the IRS debt but provides that the three parcels of real property be conveyed to the creditors holding liens thereon. Each parcel is to be conveyed to the lien creditors holding liens on that parcel in full satisfaction of the debts secured by the liens. The plan does not attempt to establish the priorities as between the various lien creditors. In the case of the debt of the IRS, the plan provides that the conveyance of each parcel shall satisfy a certain stated portion of the debt.

The IRS objects to confirmation of the plan on the basis that the plan does not comply with the requirements of § 1322(a)(2) or § 1325(a)(5) of the Bankruptcy Code.

The debtors are correct that § 1322(a)(2), by its reference to § 507, relates only to the unsecured portion of the debt owing to the IRS. If, under the provisions of § 1325(a)(5)(C), the debtors were to surrender the three parcels of property securing the claim of the IRS, it would be appropriate that the plan provide for monthly payments to the IRS upon a sum equal to the difference between the amount which would be received by the IRS upon liquidation of the three parcels and the total amount of the debt.

The debtors contend that the total value of the interest of the IRS in each of the three parcels is sufficient to pay in full the debt owing to the IRS. They also contend that if the IRS believes that any of the three properties have a value less than that asserted by the debtors, the court should hold a valuation hearing to determine what sums the IRS should be able to realize upon liquidation of the three properties. The debtors assert that the claim of the IRS should then be allowed as an unsecured claim for the difference between the

amount owing and the total value of the interest of the IRS in the three parcels.

§ 1325(a)(5) provides for three possible alternatives for dealing with secured claims. This section provides that the plan can be confirmed if:

"(A) the holder of the claim has accepted the plan;

"(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; * * ."

Since IRS has not accepted the plan, subsection (A) is not applicable.

The debtors rely upon subsection (B). They contend that by conveying the three properties to the creditors holding liens on the respective properties they are distributing property to such creditors equal in value to the amounts of the liens.

Under § 506 the claim of a creditor secured by a lien on property of the estate is an allowed secured claim to the extent of the value of the creditor's interest in the estate's interest in the property and as an allowed unsecured claim to the extent that such value is less than the total amount of the claim. Thus, if the debt is $1,000 and the value of the creditor's interest is $750, the allowed secured claim is $750 and the allowed unsecured claim is $250. If a dispute arises over the value of the creditor's interest, the court, after a hearing, may determine such value and enter an appropriate order fixing the amounts of the allowed secured claim and the allowed unsecured claim.

The question presented is whether there is any difference between subsections (B) and (C) of § 1325(a)(5).

Subsection (C) is clear. If the debtor surrenders his interest in the property securing the claim, the court can find that the requirements of § 1325(a)(5) have been met. The creditor may then foreclose his lien and file an unsecured claim for his actual or expected deficiency. It would be possible for the court to confirm the debtor's plan even though there was a disagreement concerning the value of the property and therefor a disagreement over the amount in which the unsecured claim for deficiency should be allowed. In most cases it would not be necessary for the court to determine the amount of the allowed unsecured claim until the creditor had completed foreclosure of the lien.

If the debtor wishes to retain the property, subsection (C) would have no application. Instead, the debtor would utilize subsection (B). Generally this would be done by providing in the plan a string of payments which would have a present value equivalent to the amount of the allowed secured claim. If the debtor and the creditor were unable to agree upon the value of the collateral, it would be necessary for the court to determine such value in order to determine whether the present value of the string of payments was at least equal to amount of the allowed secured claim. Unlike the situation provided by subsection (C), it would be necessary for the court to determine value prior to confirmation. Also, valuation could not be determined by the amount received by the creditor upon foreclosure since foreclosure would not yet have been accomplished.

Subsection (B) speaks of property to be distributed under the plan. The term "property", as used in subsection (B), is sufficiently broad to include cash or any other type of property.

If the "property to be distributed under the plan" could be the very property securing the claim of the creditor, then there would be no need for the plan to provide that the creditor retain the lien securing the claim as provided in subsection (B)(i). The lien would merge into the title held by the creditor. Nor would there be any need to determine that the value of the property to be distributed was not less than the allowed amount of the claim. By definition the

allowed amount of the claim is the value of the collateral.

If subsection (B) could be utilized by conveying to the creditor the very property which secured the claim, there would be no need for subsection (C). Rather than concluding that subsection (C) duplicates subsection (B), it is more reasonable to conclude that subsection (B) may be utilized when the debtor wishes to retain the property and subsection (C) may be utilized when the debtor does not intend to retain an interest in the property.

When the court suggested as an alternative that the plan might provide that the debtors would sell the properties free and clear of liens, with the liens to attach to the net proceeds of such sales, the debtors were frank to state that they did not want to be bothered with the responsibility of marketing the properties. Yet the debtors are not satisfied with utilizing subsection (C) by merely surrendering the properties to the secured creditors. What they appear to seek is to surrender the property but, prior to confirmation, obtain an order which would prevent any of the creditors holding liens from thereafter asserting an unsecured claim for a deficiency.

Section 506(a) provides that " * * * value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." When the debtor wishes to retain the property, the plan will usually provide for payments over a period of time within which to satisfy the allowed secured claim in full. The plan may or may not provide for full payment of the allowed unsecured claim. In such circumstances, it becomes necessary for the court to determine whether the string of payments proposed have a present value equal to the allowed secured claim. In the event of a dispute, a valuation hearing will be required prior to ruling upon whether the plan can be confirmed. On the other hand, if, under subsection (C), the debtor surrenders the property to the secured creditor, there will be no need to make a determination of the value of the creditor's interest in the property unless the creditor files a proof of claim as an unsecured creditor.

Since § 506(a) provides that value shall be determined in light of the purpose of the valuation and the disposition or use of the property under the plan, it could well be that, if the debtor were to surrender the property under subsection (C) of § 1325(a)(5), the court would order that the valuation be determined through a foreclosure of the lien rather than testimony as to value. Given the wide disparity often encountered in the testimony of expert witnesses upon the value of real property, an actual sale of the property might be a preferred means of establishing value.

The plan provides that the IRS shall receive from the first parcel $20,699.97, from the second $11,881.67 and from the third $26,181.84. The plan does not state what would be the result if on sale of the first parcel the IRS should receive a sum larger than $20,699.97. Would the IRS be required to apply the surplus in reduction of the amounts to be received from the second or third parcels? Would the debtor be entitled to such surplus? If each of the three properties sold for sums in excess of the total liens on all three properties, who would be entitled to the excess funds? None of these questions are answered by the plan.

The court concludes that § 1325(a)(5)(B) cannot be complied with by merely conveying to the creditor the very property which secures the claim. If the debtor wishes to give up any interest he may have in the property he may only utilize subsection (C) of that section.

An order will be entered denying confirmation of the debtor's plan.