**In re John W. & Kathleen M. TOTH, Debtors.**

**Bankruptcy No. 85 B 5853.**

United States Bankruptcy Court, N.D. Illinois, E.D.

May 21, 1986.

---

**4.** Subject to exclusions not pertinent here, the debtor in possession has the rights and powers of a trustee. 11 U.S.C. § 1107.

Francis L. Keldermans, McBride, Baker & Coles, Chicago, Ill., for Talman Home Mortgage Corp.

Cornelius F. Riordan, McNeela & Griffin, Ltd., Chicago, Ill., for debtors.

Marc C. Lipinski, Rudnick & Wolfe, Chicago, Ill., for El Lago Apartments Venture.

## MEMORANDUM AS TO ORDER DENYING TALMAN'S MOTION TO MODIFY STAY

JACK B. SCHMETTERER, Bankruptcy Judge.

Creditor Talman Home Savings & Loan moved post confirmation to modify the automatic stay. For reasons set forth below that motion has been denied.

### FACTUAL BACKGROUND

Debtors filed their chapter 13 petition on May 7, 1985, and their original chapter 13 Plan on July 18th. The original Plan provided *inter alia* that: (i) creditor Talman Savings & Loan would receive title to Unit 15B, 6157 North Sheridan Road, Chicago, Illinois; and (ii) creditor El Lago Apartments Venture would receive such equity in Unit 15B as would remain after Talman's claim was satisfied.

On August 8th, El Lago objected to that Plan. On September 5th, its objection was heard and found well taken. Debtors were given 14 days to file an Amended Plan, and the case was continued to October 3, 1985, for confirmation hearing on the Amended Plan to be filed.

On September 19, 1985, debtors filed their Amended Plan which provided *inter alia:* (i) debtors would deliver to Talman a deed in lieu of foreclosure conveying Unit 15B in return for (a) Talman's release of its mortgage against Unit 15B, and (b) Talman's cancellation and delivery to the debtors of the promissory note secured by Talman's mortgage; and (ii) nothing contained in that Plan would impair a note dated August 31, 1981, in the principal amount of $8,672, or a contemporaneous junior trust against Unit 15B securing the note. The latter instruments ran in favor of El Lago.

On October 3, 1985, El Lago withdrew its objection to confirmation and the Amended Plan was confirmed that date. However, the order confirming Plan was not entered by the clerk on the docket until November 14, 1985. Therefore, it was appealable until November 24, 1985.

On October 31, 1985, Talman moved to modify the automatic stay so as to proceed to foreclose its mortgage against Unit 15B. Talman alleged it was the holder of a purchase money mortgage against Unit 15B (having earlier filed its claim for the full amount of its mortgage, $37,043.83). Talman alleged in its motion that when the case was filed debtors were in default on the mortgage, the unpaid arrearage totalling $2,190.20. Debtors had made no monthly mortgage payments, thereby resulting in additional post petition default of $3,201.66 through October of 1985. For these reasons and the depreciation of its collateral due to debtors' continued use of the property, Talman alleged lack of adequate protection of its interest as mortgage holder justifying relief from the automatic stay under § 362 of the Bankruptcy Code.

Debtors and El Lago objected to Talman's motion on ground that the Amended Plan was confirmed and Talman had never objected to confirmation, or moved to vacate, reconsider, or appeal the order of confirmation. Therefore, they argued that Talman is bound by the treatment provided for it in the Plan; that is it must take title to Unit 15B in lieu of a foreclosure action and cannot obtain collateral relief by seeking modification of the stay. They say that Talman will obtain adequate protection from implementation of the Plan. Debtors

stand ready, willing, and able to tender the requisite quit claim deed to Talman.

Talman argued that it is not so bound, because: (i) it received no notice at all of the Amended Plan until October 31, 1985, when it presented its motion to modify the stay; and (ii) the Amended Plan impaired Talman's rights, and therefore it was entitled to, but did not receive, twenty days notice of the modification and an opportunity to accept or reject the Amended Plan as provided by 11 U.S.C. § 1323 and Bankr.R. 2002(a)(6). Talman also contended (iii) that debtors' attempt to modify Talman's rights through the Amended Plan was ineffective under 11 U.S.C. §§ 1322, 1325, because the offer of deed subject to El Lago's lien is not a "surrender" allowed by 11 U.S.C. § 1325(a)(5)(C), or a permissable result under 11 U.S.C. § 506(a). Therefore, Talman argues that the terms of the confirmation order simply cannot apply to it, and the automatic stay should be modified to allow it to proceed with foreclosure.

Concerning Talman's alleged lack of notice of the Amended Plan, the parties stipulated to the following facts: The court held a hearing on confirmation of debtors' original Plan, on notice to all creditors, on August 22, 1985. No notice was served on Talman of El Lago's objection to the original Plan. Talman did not attend the confirmation hearing set for August 22, 1985, or the continued confirmation hearing set for September 5, 1985. Talman did not file an objection to the original Plan. Talman also did not file, before or after confirmation, any objection to debtors' Amended Plan, and Talman never sought modification of the confirmation order. Transcript of Proceedings, Jan. 31, 1986, at pp. 8–13.

Talman had ample notice and opportunity to seek modification or vacation of the confirmation order. When Talman presented its motion to modify stay on October 31, 1985, it says that it first learned of the confirmed Amended Plan. Talman's counsel was immediately advised by the Court

that if she wanted to seek to vacate the order confirming the Amended Plan the Court would entertain such a motion. Counsel for Talman requested and was granted time to file that motion. Transcript of Proceedings, Oct. 31, 1985, at pp. 11–13. *See also,* Order of that date setting motion of Talman to modify stay for December 12, 1985, along with motion of Talman to vacate order of confirmation to be filed before then. It is undisputed, however, that despite the Court's invitation and the recognition by Talman's counsel of the importance of filing such a motion, Talman never filed any motion seeking relief from the order confirming debtors' Amended Plan.

Instead, Talman obtained a stipulation from debtors and filed it along with purported "agreed" order[1] to be entered. That stipulation (to which El Lago was not a party and had no prior notice) recited that debtors' Chapter 13 Plan had been amended without notice to Talman, and that Talman agreed to waive such notice in consideration of debtors' agreement to amend the Plan to modify the stay to allow Talman to proceed with foreclosure. The "agreed" order modifying stay (and thereby amending the Plan) was entered on December 9, 1985, but vacated on January 9, 1986, since it was conceded that no notice thereof had been served on El Lago.

Some additional facts that came to light during the course of these notice-free proceedings are pertinent. The property in question, Unit 15B, is not debtors' principal residence. It is not occupied by them and they have no interest in keeping this real estate. Transcript of Proceedings, Jan. 31, 1986, at p. 54. The debtors opposed Talman's motion to modify the stay to foreclose only because the result would be contrary to the Amended Plan and would allow Talman to seek a deficiency. Transcript of Proceedings, Oct. 31, 1985, at p. 45. To explain why he signed the stipulation with Talman to modify stay, debtors' counsel

---

1. Mr. Riordan, debtors attorney, denied that he agreed to that order. He did not respond to the letter of Talman's outside counsel, Mr. Kelder-

mans, requesting that Mr. Riordan sign and return three copies of that order. Transcript of Proceedings, Jan. 31, 1986, at p. 49.

stated he was unsure whether the confirmation order had been docketed. If it had not been docketed, Talman would have a right to modification of stay, he explained. *Id.* at 89. The Court does not understand that explanation, in the light of the Amended Plan.

Counsel for debtors also stated that he contacted Talman's in-house counsel within the week before the Amended Plan was filed. He spoke with a male attorney, whose name he did not recall, and informed him about the relevant Amended Plan terms. Transcript of Proceedings, Jan. 31, 1986, at pp. 30–32. On September 18, 1985, the day before the Amended Plan was filed, he spoke with Ms. Jill Kelly, one of Talman's in-house attorneys, and again told her the contents of the relevant amendment. *Id.* at pp. 32–3. Debtors' counsel also explained why he never served formal notice of the Amended Plan on Talman. He stated his understanding of the Bankruptcy Rules (Bankr.R. 2002(a)) was that the Court Clerk would serve notice of modifications of an Amended Plan to advise creditors (though in fact there is no such procedure). Further, he was not told by his office to serve notice thereof on El Lago. *Id.* at 88.

█ Whatever difficulties counsel for debtors or El Lago may have had in finding the Talman attorney responsible for this case, Talman filed its proof of claim on June 5, 1985, showing the name, address and phone number of its outside counsel. Oral notice by telephone call is simply not by itself a proper substitute for the formal written notice that the Bankruptcy Rules require. 11 U.S.C. § 1323, and Bankr.R. 2002(a)(6).

Why didn't Talman move to vacate the order of confirmation after requesting time to do so when its motion to modify stay was heard on October 31st well before the confirmation order became final? After that hearing, the Talman attorney's file was sent back to Talman's outside counsel, Mr. Keldermans. Mr. Keldermans prepared the stipulation to modify stay and obtained the signature of debtors' counsel.

Transcript of Proceedings, Jan. 31, 1986, at pp. 64–65. It was then still possible, as the court had suggested, for Talman to attack the confirmation order. Instead, the alternative tactic deliberately employed by Talman was to obtain the stipulation for modification of the stay, *Id.* at 66, and to have the order therefor entered without notice to El Lago.

If Talman were to obtain relief and proceed with foreclosure, it would extinguish El Lago's lien. But if bound by the terms of confirmation order to take a deed to Unit 15B in lieu of foreclosure, it is subject to liens and encumbrances, principally that of El Lago, and will lose all right to a deficiency judgment or claim therefor.

The issues presented from these facts are:

1. Is Talman bound by the *res judicata* effect of the confirmation order when it did not receive a formal 20-day notice of modification of Plan prior to such confirmation?

2. Since Talman failed to pursue available remedies or file its objections to confirmation after being invited to do so by the Court, is there any basis to afford Talman relief from the binding effect of the confirmation order?

3. Is the treatment provided Talman's secured claim by the Amended Plan permissable under the confirmation standards of 11 U.S.C. § 1325.

### The Res Judicata Effect of the Confirmation Order

Neither debtors nor El Lago served Talman with notice of the debtors' proposed modification of the original Plan, and the Amended Plan was confirmed. Yet, no later than October 31, 1985, and 24 days before the confirmation order became final, Talman had actual notice of the Plan modification. It then had opportunity to present its objections to the Court and have a full hearing on its opposition to the Plan amendment. Talman may even have learned of this earlier. That conclusion is suggested by the following: *First,* Talman

did not refute or deny the assertion that debtors' counsel discussed the Amended Plan with two of Talman's in-house attorneys before the Plan was filed. *Second,* Talman's motion to modify stay filed October 31, 1985, states at paragraph 4 that debtors were to pay the Chapter 13 trustee $730.00 per month. That amount appeared in the Amended Plan that Talman said it had no notice of prior to that date, whereas the original Plan provided only for payment of $630.00 per month. *Third,* Talman certainly received notice of the Amended Plan in open court on October 31, 1985, when it presented its motion to modify stay, and the court then invited it to file by motion any objections it had to the Amended Plan. The order confirming Amended Plan, although entered on October 3, 1985, was not docketed until November 14, 1985. Talman therefore had from October 31st to November 24th to move for a vacation or reconsideration of the confirmation order for lack of timely notice or any other ground.

Talman failed to file its objection to the Amended Plan; failed to move to vacate or for reconsideration of the order of confirmation; and failed to appeal the order of confirmation. Instead Talman chose to rest procedurally solely on its motion to modify stay, and to obtain a stipulation and "agreed" order [2] modifying the stay initially without notice to its real opponent El Lago. Consequently, the confirmation order became final prior to the hearing on motion to modify stay, and the "agreed" order to modify stay was later vacated. The stay against foreclosure continued in effect and Talman sought relief from it.

Two established principles have clashed here: An order confirming a Chapter 13 Plan clearly is *res judicata* as to all justiciable issues which were or could have been decided at the confirmation hearing. *In Re Zimble,* 47 B.R. 639, 640 (Bankr.D.R.I.1985). However, a creditor's claim cannot be subjected to a confirmed Plan of reorganization that it had no opportunity to dispute. *New York v. N.Y., N.H. & H.R. Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97

L.Ed. 333 (1953); *Reliable Elec. Co., Inc. v. Olson Const. Co.,* 726 F.2d 620, 623 (10th Cir., 1984). There is a fundamental due process requirement of notice in any proceeding which is accorded finality. Notice must be reasonably calculated to apprise interested parties and afford them an opportunity to present their objections. *Reliable Elec. Co., Inc. v. Olson Const. Co.,* 726 F.2d at 622. Even creditors such as Talman who have knowledge of a bankruptcy proceeding have a right to assume that reasonable notice will be given them before their claims are forever barred. *New York v. N.Y., N.H. & H.R. Co.,* 344 U.S. at 297, 73 S.Ct. at 301. Likewise, as conceded, El Lago was entitled to notice before its rights under the Amended Plan could be impaired by the "agreed" order to modify stay.

Modification of a chapter 13 Plan prior to confirmation leaves prior acceptances or rejections unaltered unless the modification changes the rights of the holder of a claim and that party changes its prior acceptance or rejection. 11 U.S.C. § 1323. *In Re Hopper,* 17 B.R. 292, 295 (Bankr.W.D.Ky. 1982). The Amended Plan here left El Lago's lien intact, and thereby did materially change Talman's rights as compared to the original Plan. Although Talman would still take title to Unit 15B under the Amended Plan, that title was now subject to El Lago's secured claim which had remained subordinated to Talman's mortgage under the first Plan. Talman was therefore entitled to 20 days written notice of the modification to afford it an opportunity to accept or reject the Amended Plan. *See* 11 U.S.C. § 1323, Bankr.R. 2002(a)(6). Admittedly, Talman did not receive that formal written notice. The question to be resolved now is whether the actual notice it did receive in time to protect itself was sufficient to meet the requirements of procedural due process and standards of procedural fairness in bankruptcy.

Talman cites *Reliable Electric Co. v. Olson Const. Co.,* 726 F.2d 620 (10th Cir.

---

**2.** *See* note 1 *supra.*

1984), in support of its position that absence of formal 20-day notice precludes it from being bound by the confirmation order. That case is distinguishable. The Court in *Reliable* held a creditor could not be bound by the reorganization Plan when he had not received "formal notice of any kind regarding the reorganization proceedings, or the time and manner of filing a claim." *Id.* at 622. In contrast, Talman received actual notice of the modification and an opportunity to have its objection heard almost a month before the confirmation order became final.

Equally distinguishable is the well recognized case *New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). The City of New York, a known creditor, was not given formal or reasonable notice of the claims bar date and therefore did not file its lien claims. *Id.* at 294, 296, 73 S.Ct. at 300, 301. The Supreme Court held that absent adequate notice the City's liens could not be barred. *Id.* at 296–97, 73 S.Ct. at 300–01. That Court's comments illuminate the difficulty with Talman's position: "The statutory command for notice embodies a basic principle of justice—that *a reasonable opportunity to be heard* must proceed judicial denial of a party's claimed rights." *Id.* at 297, 73 S.Ct. at 301 (emphasis supplied). Talman here had both actual notice of the Amended Plan and confirmation order and a reasonable opportunity to be heard. It was invited by the court to file something attacking the Amended Plan and confirmation order but elected not to do so.

■ In bankruptcy, a procedural rule requiring notice is adequately complied with by procedure whereby a party not receiving formal notice does receive actual notice and has some available remedy to set aside the judgment. *Matter of Park Nursing Center, Inc.*, 766 F.2d 261, 263 (6th Cir. 1985). Debtors, of course, did not send Talman formal notice of the Amended Plan as required by the Bankruptcy Rules. Yet Talman received actual notice. Since the confirmation order was not docketed until November 14, Talman thereafter had remedies available to it to challenge the confirmation order for 10 days after that date. The absence of formal written notice has been the focus of Talman's argument in this case. But informal notice which provides creditors with opportunity for a fair hearing will satisfy the requirement of notice and procedural due process, since creditors with informal notice can thereby be afforded protection equal to that afforded creditors with formal notice. *Ascencio v. Ramirez*, 36 B.R. 943, 944–45 (D.V.I.1984).

■ The fact that Talman did receive actual notice in time to act, coupled with the Court's expressed invitation to file its objections to confirmation, means there was no denial of procedural due process here. Talman had both reasonable notice under the circumstances and an opportunity to be heard. Instead, it chose the tactic of attempting to block El Lago with a stipulation to modify stay that it obtained without notice to El Lago. Such tit-for-tat retribution may in some circles be viewed as poetic justice. Here, it demonstrates a calculated tactical choice which, once it backfired, cannot be ignored. Talman's opportunity to attack the Amended Plan in time was deliberately discarded by it. It must live with that choice.

■ The provisions of a confirmed Plan bind a creditor, whether or not such creditor has objected to, accepted or rejected the Plan. 11 U.S.C. § 1323. A party in interest may object to confirmation of the Plan, 11 U.S.C. § 1324, as Talman had reasonable opportunity to do. Once a Plan is confirmed, the finality of § 1327 removes a creditor's right to assert any interest other than that provided for in the Plan. *In Re Zimble*, 47 B.R. 639, 640 (Bankr.D.R.I. 1985). A creditor's motion to modify the stay after confirmation can be an appropriate procedural vehicle only when there is a post confirmation default by the debtor, such as failure to make payments, maintain insurance, waste, or other changed circumstances. *See In Re Zimble*, 47 B.R. at 640–41; *In Re Pizzullo*, 33 B.R. 740, 741–42 (Bankr.E.D.Pa.1983).

■ Talman did allege unpaid arrearages and post petition defaults by debtors. However, the debtors have no intention of paying arrearages and curing defaults so they can retain the property as is usually the case with chapter 13 debtors. The confirmed Amended Plan, which is *res judicata*, provides that Talman accept title to Unit 15B in full satisfaction of its mortgage claim. Thus, the only post-confirmation default that would warrant modifying the stay for Talman would be debtors' failure to comply with the terms of the Plan. Debtors have represented through counsel on the record their willingness to quit claim title to Unit 15B to Talman. *See* Transcript of Proceedings, Oct. 31, 1985, at p. 7. Therefore, Talman is only entitled to relief from the stay if there is some other basis for granting it relief from an order which is *res judicata* and which it failed to contest after ample opportunity to do so.

### *Rule 59 or 60 F.R.Civ.P. does not afford relief here*

The only motion before the Court was Talman's motion to modify the stay, and that did not seek relief from any order of this Court. Just as Talman did not move to have the confirmation order vacated or reconsidered, it did not file a motion under F.R.Civ.P. 59 [Bankr.R. 9023] or F.R.Civ.P. 60 [Bankr.R. 9024] for relief from the confirmation order. Nor did it appeal the confirmation order.

■ Talman suggested that the Court consider its motion to modify stay as one challenging the Amended Plan. Transcript of Proceedings at 20, *In Re Toth*, No. 85 B 5835 (Bankr.N.D.Ill. Jan. 31, 1986). This

Court certainly has authority to vacate an order which is *res judicata,* and it may exercise that power very liberally. *In Re Johnson & Morgan Contractors,* 29 B.R. 372, 374 (Bankr.M.D.Pa.1983). But its discretion is not limitless. To alter, amend or obtain relief from a judgment or order, the rules require the party seeking such relief to present an appropriate motion to the Court, F.R.Civ.P. 59(b), (e), 60(b), particularly stating the grounds for relief sought. F.R.Civ.P. 7(b)(1) [Bankr.R. 7007]. Talman moved only to modify the stay, not for any other relief. The tactical decisions such a party makes should ordinarily bind it.

In any event, were the Court to accept Talman's suggestion and consider its motion one to set aside the confirmation order, it would still not be entitled to relief. Ordinarily, a motion to alter or amend a final judgment or order, F.R.Civ.P. 59, "shall be served not later than 10 days after entry of the judgment." F.R.Civ.P. 59(e). This Talman did not do, and "the mandate to serve the motion in timely fashion is a jurisdictional prerequisite." *In Re Johnston,* 37 B.R. 361, 363 (Bankr.D.Vt.1984). After the 10 day period expires, a party can ordinarily be granted relief from the confirmation order, if at all, only under F.R.Civ.P. 60(b). *In Re Johnston,* 37 B.R. at 364. Rule 60 of F.R.Civ.P. applies in bankruptcy except that an action to revoke confirmation may only be filed only within the time allowed by § 1144 and § 1330 (up to 180 days if obtained by fraud, which is not alleged here), Bankr.R. 9024(3).

There are several reasons why this court could not grant Talman relief under Rule 60(b).[3] Only two provisions might argue-

---

3. Fed.R.Civ.P. 60(b) [Bankr.R. 9024] provides in pertinent part:

(b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovery Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore de-

nominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding

ably provide a basis for relief in this case, subsection (b)(1), "excusable neglect," or subsection (b)(6), "any other reason justifying relief from the operation of the judgment."

Talman could not demonstrate that its failure to timely challenge the confirmation order after receiving actual notice of the confirmed Amended Plan was attributable to excusable neglect. Excusable neglect is "the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.... Ordinary negligence is not enough ... lack of control over events is essential." *In Re Johnston,* 37 B.R. 361, 364 (Bankr.D.Vt.1984).

It is apparent here that when the confirmed Amended Plan became final, unappealable and *res judicata,* that was not the result of circumstances beyond Talman's control. Instead, Talman found itself in the present predicament due to tactical planning that backfired, and perhaps some confusion among its many attorneys. After the October 31st hearing where Talman was granted time to file something attacking the Amended Plan, the client file was sent back to a different counsel. Debtor's attorney claimed that he spoke with two in-house attorneys and paraphrased the contents of the Amended Plan to both. Yet another attorney appeared for Talman on October 31st and stated that she had no prior knowledge of the Amended Plan. In the context of the evident tactical mischoice by Talman's counsel who sought to "end-run" El Lago through a stipulated motion to modify stay, the foregoing does not demonstrate excusable neglect by Talman's counsel.

█ It cannot be doubted that since the name and address of Talman's outside counsel appeared on the proof of claim it filed, the debtor or El Lago could and should have served Talman with formal notice of the Amended Plan. Given the cavalier attitude that these and many other

Chapter 13 counsel have shown toward notice requirements, this Court would ordinarily find lack of written notice of an Amended Plan quite sufficient a ground to vacate a confirmation order on application by a creditor whose rights were thereby impaired. That would be "reason" enough under Rule 60(b)(6) F.R.Civ.P.

█ Nonetheless, counsel for such creditors are charged with responsibility to protect their clients' interests before this Court. Talman's failure following actual notice to file an appropriate motion before the confirmation order became final was not due to any excusable neglect.

Furthermore, a party such as Talman, which contends that legal error was made but fails to make an effort to file timely appeal is not entitled to relief under F.R. Civ.P. 60(b)(6). *In Re Roco Corp.,* 37 B.R. 770, 775 (Bankr.D.R.I.1984).

### *Even if timely sought, relief under § 1325 was not required*

Talman did suggest to the court that the treatment provided for it by the confirmed Plan was not a "surrender" permitted by 11 U.S.C. § 1325(a)(5)(C). Talman offered no argument to support that assertion, and the question was not briefed by either party.

The original Plan provided Talman would receive title to Unit 15B and El Lago would receive such equity in Unit 15B as remains after Talman's claim is satisfied. There was no provision for the unsecured balance of any secured creditor's claim. The Amended Plan also provides that Talman take title to Unit 15B. However, it specifies that this shall be a deed in lieu of foreclosure and in return Talman shall release its mortgage and cancel the debtors' promissory note. In addition El Lago's junior lien and note remain unimpaired. The Amended Plan does provide that unsatisfied secured debt shall be paid as an unsecured debt if established. The value

was entered or taken. A motion under this subdivision (b) does not affect the finality of a

judgment or suspend its operation ...

of Unit 15B as listed in the debtors petition is approximately $4,000 less than the indebtedness they owe Talman and El Lago.

Talman had formal and actual notice of the original Plan, which effectively required it take a deed in lieu of foreclosure. It filed no objection to that, apparently because the Plan expressly subordinated El Lago's lien to its mortgage. Following El Lago's objection to the original Plan, the debtors amended the Plan specifically to provide for Talman take a deed in lieu of foreclosure and thus leave El Lago's lien unimpaired. This of course is the basis for Talman's objection.

A question thus arises under § 1325 of the Bankruptcy Code. Did the court err in confirming a Plan which required Talman as first mortgage holder to accept debtors' interest in the property subject to the full value of the junior lien, thereby reducing the value of its first secured claim? Pursuant to the discussion below, the Court concludes that no legal error was committed in confirming the Amended Plan and therefore Talman would not necessarily have been entitled to relief on the merits even if it had mounted a timely attack against the confirmation order.

The court may confirm a chapter 13 Plan only if the six requirements of 11 U.S.C. § 1325 are met. *In Re Simmons*, 765 F.2d 547, 554 (5th Cir.1985); *see also* 11 U.S.C. § 1325(a)(1), (2), (3), (4), (5) and (6). As to a secured creditor such as Talman, (i) the holder of such claim must accept the Plan, (ii) the Plan must provide that the holder of such claim retain the lien securing such claim and that the value of property to be distributed under the Plan on account of such claim cannot be less than the allowed amount of such claim, *or* (iii) the debtor surrenders the property securing such claim to such holder. 11 U.S.C. § 1325(a)(5)(A), (B) and (C).

In the usual Chapter 13 case, debtors wish to retain their property and proceed under § 1325(a)(5)(B). Therefore, few cases have addressed the question of what is required when a debtor does elect to surrender the property to the secured creditor.

■ One principle is clear. The court cannot confirm a Plan which deprives a secured creditor of his lien against the debtors' property. In *In Re Simmons*, 765 F.2d 547 (5th Cir.1985), a Chapter 13 case, a secured creditor filed a proof of claim identifying his claim as secured, but debtor's Plan listed that debt as disputed and unsecured. The creditor accepted the Plan but did object to his claim being scheduled as unsecured. He did not attend the confirmation hearing and did not object to the trustee's motion to allow claims. Thus his claim was deemed an allowed unsecured claim. *In Re Simmons*, at 549, 554. The Court of Appeals held the Plan was erroneously confirmed because the creditor's claim should have been deemed an allowed secured claim for purposes of confirmation. *In Re Simmons*, at 554. The Court rejected the argument that the effect of the creditor's being bound by the confirmed Plan providing for his claim as unsecured was to divest its lien, and held the creditor's statutory lien to be unimpaired by the confirmation order. *In Re Simmons*, at 555–56, 559.

In *Matter of Tarnow*, 749 F.2d 464 (7th Cir.1984), a chapter 11 case, a secured creditor filed its claim against the estate after the claims deadline passed. The bankruptcy judge disallowed the claim because it was late and declared the creditor's lien extinguished. The district court affirmed and the Seventh Circuit reversed. The Court held that secured creditors do not have to file claims and can ignore the bankruptcy proceeding without endangering their liens. *Id.* at 465, 466.

A long line of cases, though none above the level of bankruptcy judges since the Bankruptcy Code was overhauled in 1978, allows a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt. *See Long v. Bullard*, 117 U.S. 617, 620–21, 6 S.Ct. 917, 918, 29

L.Ed. 1004 (1886); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 582–83, 55 S.Ct. 854, 859–60, 79 L.Ed. 1593 (1935); *United States Nat'l. Bank v. Chase Nat'l. Bank,* 331 U.S. 28, 33, 67 S.Ct. 1041, 1044, 91 L.Ed. 1320 (1947) (dictum); *In Re Woodmar Realty Co.,* 307 F.2d 591, 594–95 (7th Cir.1962); *Dizard & Getty, Inc. v. Wiley,* 324 F.2d 77, 79–80 (9th Cir.1963); *Clem v. Johnson,* 185 F.2d 1011, 102–14 (8th Cir.1950); *DeLaney v. City and County of Denver,* 185 F.2d 246, 251 (10th Cir.1950); *In Re Bain* 527 F.2d 681, 685–86 (6th Cir.1975); *In Re Honaker,* 4 B.R. 415, 416 and n. 3 (Bankr.E.D.Mich.1980); cf. *In Re Rebuelta,* 27 B.R. 137, 138–39 (Bankr.N.D.Ga. 1983); *In Re Hines,* 20 B.R. 44, 48 (Bankr.S.D.Ohio 1982). The Commodity Credit Corporation's claim was rejected for no other reason than that it was late, and this ground of rejection does not call into question the validity of the lien[.] ... The destruction of a lien is a disproportionately severe sanction for a default that can hurt only the defaulter.

...

If an ordinary plaintiff files a suit barred by the statute of limitations, the sanction is dismissal; it is not to take away his property. And a lien is property. *See e.g., United States v. Security Industrial Bank,* 459 U.S. 70, 76–77, 103 S.Ct. 407, 411, 74 L.Ed.2d 235 (1982).

*Matter of Tarnow,* 749 F.2d at 469, 466. Thus a creditor, such as Talman, who has failed to exercise due diligence and properly protect its interest during the course of the bankruptcy proceeding cannot on that basis alone be deprived of its property, or its interest in the value of the debtor's property.

Finding that Talman is bound by the confirmation order here is not, however, contrary to the principles espoused in *In Re Simmons* and *Matter of Tarnow.* Unlike the creditors in those cases, Talman did not merely lack diligence but made a factual choice not to attack the confirmation head on. Moreover, it will receive here the property which secures its claim against the debtors. The Amended Plan and confirmation order do not in any sense extinguish Talman's mortgage lien, but rather provide for the satisfaction of its allowed secured claim. It has through the Amended Plan lost not its secured lien but rather the right to foreclose out the right of the junior El Lago lien under state law.

To meet the requirements of § 1325(a)(5)(C) and effect a permissable surrender of property, the debtor's Plan must provide for the unsecured portion of the secured creditor's claim. *In Re Stockwell,* 33 B.R. 303, 305–06 (Bankr.D.Or. 1983); *In Re Erwin,* 25 B.R. 363 (Bankr.D. Minn.1982). For example, it was held in *In Re Stockwell,* 33 B.R. 303 (Bankr.D.Or. 1983), that if debtor surrendered his interest in the property securing the claim, the requirements of § 1325(a)(5) would be met.

■■■ When the value of the collateral surrendered is less than the indebtedness owed, the creditor's unsecured claim must ordinarily be provided for. However, the surrender of the debtors' real property to Talman here is not governed by § 9–504 of the Uniform Commercial Code as in other cases.[4] *C.f. In Re Stockwell,* 33 B.R. 303 (Bankr.D.Or.1983) (tax liens); *In Re Erwin,* 25 B.R. 363 (Bankr.D.Minn.1982) (judicial liens). When a mortgagor takes title and acquires the mortgagee's interest in the property securing the mortgage indebtedness as provided by *both* Plans in this case, a merger of the lesser and greater estates is deemed to occur and the underlying debt is extinguished under Illinois law. *Priess v. Buchsbaum,* 332 Ill.App. 565, 574, 76 N.E.2d 195 (1947); *accord Bank of Benton v. Cogdill,* 118 Ill.App.3d 280, 73 Ill.Dec. 871, 454 N.E.2d 1120 (1983); *In Re Stockwell,* 33 B.R. at 305. Therefore Talman was not entitled to an unsecured claim for any deficiency under the original

---

**4.** The Illinois property involved here was not held in an Illinois land trust in which the debtors held a beneficial interest. Under those circumstances their interest would have been considered personal property, and the Uniform Commercial Code as adopted in Illinois would have applied to the surrender of the property.

Plan to which it did not object. In that regard, the Amended Plan was not a change.

When Talman takes title to Unit 15B and releases its mortgage, El Lago's junior lien and mortgage will become a first lien and mortgage encumbering the property. See *Ready v. Ready*, 300 Ill.App. 42, 51 20 N.E.2d 636 (1939). The result would have been the same under the original Plan but for the clause in the Amended Plan subordinating El Lago's lien. When debtors seek to utilize § 1325(a)(5)(C) and surrender property that is subject to more than one secured claim, it would no doubt ordinarily be preferable to surrender the property to all the various lien creditors and provide for foreclosure or other disposition to value the secured claims against the property and any resulting unsecured claims. That was not done here.

In *In Re Stockwell, supra*, 33 B.R. at 304, 306, the Court would not approve a surrender where the Plan did not establish priorities among the various lien creditors and did not adequately provide for the apportionment of funds produced by disposition of the three parcels of real estate. Likewise, in *In Re Erwin, supra*, 25 B.R. at 367, the Court would not permit debtor to surrender only one of two parcels to the secured creditor holding liens upon both parcels. (The debtor's Plan there made no provision for the parcel that was not being surrendered.)

The debtors' Amended Plan here did not suffer from comparable deficiencies. There is but one piece of property involved, and it is being surrendered to the holder of the first mortgage lien. The priorities of both secured creditors with interests in this property are specified. Talman will receive the property which secures its claim, albeit subject to El Lago's lien which will have to be paid to deliver unencumbered title to a purchaser. Although the fairness of the result can be challenged, Talman failed to do so timely, and that result was not barred by § 1325(a)(5). Under a Chapter 13 Plan, a debtor has the alternative to surrender the collateral as the Toths elected to do. There is no re-

quirement that the property surrendered cannot have a value less than the allowed amount of the secured claim. If the value of Unit 15B approximates the debtors' valuation of $42,000 and El Lago's claim of approximately $6,400 is satisfied, $35,600 will remain to satisfy Talman's claim of $37,000. Therefore the surrender of Unit 15B subject to El Lago's lien should not result in a significant reduction in the value of Talman's allowed secured claim. Indeed, the asserted unfairness to Talman may be more apparent than real.

This Court does not intend to suggest that the type of surrender provided by the debtors' Amended Plan is the optimal treatment that should be afforded lienholders or that would be approved in the usual contested case. The Court merely concludes the Amended Plan made adequate provision for claims against the property to be surrendered and met the requirements of § 1325(a)(5). Talman was not deprived of its lien or the substantial value of its allowed secured claim, though it will not be entitled to provision for an unsecured claim for a deficiency.

For the foregoing reasons, this Court earlier denied Talman's motion to modify stay.