**In re Paul S. HAYNES, Debtor.**

**Bankruptcy No. 85–02159–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.·

Nov. 8, 1989.

R. Lee Mason, Counsel for GMAC McGuire, Woods, Battle & Boothe, McLean, Va., for GMAC.

David E. Jones, Falls Church, Va., for debtor.

Gerald M. O'Donnell, Chapter 13 Trustee Alexandria, Va.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr.,
Chief Judge.

This matter is before the Court upon the objection of the Chapter 13 Trustee ("Trustee") to an amended proof of claim filed by General Motors Automobile Corporation ("GMAC") in the above referenced case.

On April 3, 1985, Paul Haynes ("Haynes" or "debtor") purchased a 1985 Nissan 300ZX, and entered into an installment sales contract with GMAC (hereinafter "Contract") in the amount of $25,669.92. On December 4, 1985, Haynes filed a petition for relief under Chapter 13 of the United States Bankruptcy Code ("the Code"). 11 U.S.C. § 101 *et seq.* In his Chapter 13 Statement, Haynes listed the obligation to GMAC as a "Secured Debt in the amount of $19,500.00." In the column

---

entitled "Installment Amount and Period and Number of Installments in Arrears," the debtor typed simply: "$534.00." With his Chapter 13 Statement, the debtor also filed his Chapter 13 plan, which stated that a payment of $705.18 would be paid to the Chapter 13 Trustee over a period of 36 months and applied to administrative costs, priority claims under Section 507 of the Code, secured claims and to 50% of the unsecured claims. The plan specifically provided:

> *From the payments so received,* the trustee shall make disbursements as follows:
>
> 1. The priority payments required by Title 11, United States Code § 507.
>
> 2. After the above payments, dividends to secured creditors whose claims are duly proved and allowed as follows: (Specify special treatment for individual creditors, including specific or fixed monthly payments, if any.)
>
> GMAC (Auto Loan) $534.00

On December 17, 1985, GMAC filed a proof of claim for $18,368.52. The proof of claim listed the components of the amount owed as follows:

| | |
|---|---|
| Principal | 22,461.18 |
| Plus Additional Charges | 80.19 |
| Total | 22,541.73[1] |
| Less Payments/Credits | 4,172.85[2] |
| Balance Due | 18,368.52 |

The proof of claim added: "Additional charges are late charges accrued before filing." Appended to the proof of claim was a copy of the "Installment Sales Contract" and the Certificate of Title for the car.

1. The proof of claim lists $22,461.18 plus $80.19 incorrectly as totalling $22,541.73. The correct total of $22,461.18 plus $80.19 is $22,541.37.

2. According to GMAC $4,092.66 was "rebated from the amount of its Proof of Claim" because it was "interest which had not yet matured under the Contract as of the date of the Debtor's Chapter 13 filing," such that $4,172.85 is "the amount of the interest which has matured since the date of the Debtor's chapter 13 filing, [$4,092.66], plus an additional $80.19 in pre-petition late charges." Memorandum in Support of Allowance of GMAC's Claim for Post-petition Interest, pp. 2, 3 (hereinafter "GMAC Memoran-

On January 10, 1986, the debtor filed an Amended Plan which increased the monthly allotment from $705.18 per month to $775.18 per month. Haynes again listed his debt to GMAC as a secured debt, adding only a more complete description of the debtor's car: "GMAC (Auto Loan) $534.00 per month for 1985 Nissan 300ZX." On January 16, 1986 the debtor filed a Second Amended Plan ("The Plan") which increased the monthly allotments to $798.64 and described the GMAC debt exactly as it had in the First Amended plan.[3] On February 11, 1986 this Court held a hearing on confirmation, and no objections were raised. Accordingly, an order confirming the debtor's Chapter 13 second amended plan was entered in open court.

After the face value of GMAC's proof of claim was paid, the Chapter 13 Trustee requested that GMAC forward the certificate of title to the debtor. GMAC declined, indicating that under the Contract it was entitled to accrued interest and pre-petition late charges. The Trustee then suggested to GMAC that it file an amended proof of claim to collect the amounts that GMAC alleged were due.

GMAC filed an amended proof of claim on May 3, 1989, for $22,461.18, and explained in the amended proof of claim:

> The debtor was, at the time of the filing of the petition initiating this case and still is indebted [or liable] to this claimant, in the sum of $4172.85 (This figure represents the accrued interest and the pre-petition late charges of $80.19).
> *As of December 17, 1985 the balance was 22461.18 minus unaccrued interest of 4172.85 = 18368.52.[4] **As of 4/28/89 the balance remaining is 4172.85.

dum"). It is unclear why "$80.19" was subtracted from the balance due when in fact GMAC sought to collect that amount as an "Additional Charge."

3. The only difference in the description of GMAC's claim is that the first letters of "auto loan" were typed in the lower case: "GMAC (auto loan) $534.00 per month for 1985 Nissan 300ZX."

4. This computation does not appear to be correct. The unaccrued interest as of December 17, 1986 as stated by GMAC in its Memorandum

On April 14, 1989, the Trustee filed his objection to GMAC's amended claim, and on June 13, 1989 this Court held a hearing to resolve the Trustee's opposition. The matter was taken under advisement.

GMAC argues that under Section 1322(b)(2) of the Code, a debtor's chapter 13 plan *may* leave unaltered the rights of secured or unsecured creditors. Section 1322(b)(2) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, *or leave unaffected the rights of holders of any class of claims;*

11 U.S.C. § 1322(b)(2) (emphasis supplied by GMAC). GMAC also notes that under Section 1322(b)(5) of the Code, a plan may provide for postpetition payment of secured claims as they fall due. Subsection 1322(b)(5) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

Consequently, GMAC maintains that "the Bankruptcy Code makes it clear that a debtor's Chapter 13 plan *may* permit payment of postpetition interest if such is the result of the Debtor's reinstating the contract rights of a creditor through his Plan." GMAC Memorandum, p. 5.

GMAC contends that it had every right to assume that its contract had been left intact under the debtor's plans. First, GMAC claims that there was an "absence of any provision or notation whatsoever in the Plan suggesting that the Debtor's Con-tract with GMAC was, in fact, … modified." *Id.* Second, GMAC asserts that "[t]he plan neither assigns a value to the vehicle nor states that GMAC will be paid at 100% up to the value of the vehicle and at a lesser percentage for the amount of its claim exceeding the value of the vehicle, both of which are implicit requirements for confirmation of a Plan under Section 1325(a) of the Code." *Id.* Third, GMAC maintains that "the payment amount to be made to GMAC under the Plan ($534.00) is virtually identical to the amount GMAC had been receiving under its Contract with the Debtor ($534.79), and "[w]ith this similarity in amounts, it was logical for GMAC to conclude that the terms of the Contract were simply being reinstated by the Plan and that payments would continue from the Debtor until the account was paid in full." *Id.*, p. 6.

GMAC also alleges that if it believed its contract rights were impaired it "would have filed an objection to the Plan prior to confirmation." *Id.*, pp. 6–7. GMAC then adds with respect to its first proof of claim that it rebated the postpetition interest to conform with § 502(b), which enables creditors to claim only the amount due and owing "as of the date of the filing of the petition," and § 502(b)(2) which disallows "unmatured interest." *Id.*, pp. 7–8. Finally, GMAC notes that a proof of claim for the postpetition amounts is not necessarily required by the Code, and should be allowed in the "furtherance of justice." *Id.*, p. 8 (citing *Fyne v. Atlas Supply Co.,* 245 F.2d 107 (4th Cir.1957); *Dabney v. Addison,* 65 B.R. 348 (E.D.Va.1985)).

The Chapter 13 Trustee approaches the problem at hand from a different perspective. First, the Trustee notes that under § 506(a) a claim is unsecured to the extent that the value of the collateral is less than the allowed amount of such claim. 11 U.S.C. § 506(a). The Trustee further notes that GMAC's proof of claim listed the "Average Retail Value" of the car as $15,-100.00 and the "Average Trade-in Value" as $13,500.00. Even with GMAC's higher

is $4,092.66. *This* figure subtracted from $22,-

461.18 is $18,368.52. *See supra* note 2.

value, he observes, GMAC's claim was *under* secured. Consequently, the Trustee contends that under § 1325(a)(5) GMAC was entitled to the present value of the allowed secured portion of its claim:

Allowed Secured Claim: $13,500.00
Sec. 1325 Interest            2,181.96
— (10% over 36 mos.)
Total Due on Secured:                    $15,681.96
Unsecured Dividend            *2,434.26*
— (4858.52 @ 50%)
Total Due From Plan:                     $18,116.22

In view of the fact that the creditor was paid the face value of its claim ($18,368.52), the Trustee maintains that GMAC received *more* than it should have, and the lien securing the collateral should be released. The Trustee does not address directly GMAC's primary argument that it could have received postpetition interest and prepetition late charges if the terms of the contract had been preserved in the Plan.

The debtor indicates merely that GMAC, having failed to object to the debtor's plan at the hearing on confirmation, cannot amend its proof of claim at this time. The debtor also adopts the Trustee's argument that because GMAC was undersecured, it was not entitled to postpetition interest. Counsel for the debtor does not state what Haynes actually intended to provide GMAC when Haynes initially filed the plan *pro se*.

We note at the outset that we are not persuaded entirely by any of the positions advanced. Although GMAC indicates that it had no reason to believe that its contract rights were modified, we find that the debtor's first plan and every amended plan thereafter provided without explanation that $534.00 would be paid to GMAC per month. With no provision in the plan for payments to GMAC beyond the life of the plan, the most GMAC could expect was 36 payments. The difference between the amount obtainable under the plan, $19,-224.00, and the amount GMAC alleges it is owed, $22,461.18, is $3,237.18. This certainly would not constitute assurance that GMAC's contract rights were intact. GMAC further asserts that the payment of $534.00 was in essence the same as the original payment, but we note here that even if the installment amount was *exactly* the same as the contract amount, the payment of $534.79 for 36 months totals $19,-252.44, an amount which *still* does not equal the amount of $22,461.18 that GMAC alleges it was owed under the contract. Thus, both the installment amount, and the total amount GMAC would receive upon completion of the plan should have put GMAC on notice that its contract rights had been modified.

GMAC contends that it would have objected to the plan upon explicit notice that its contract rights had been modified. It is obvious however, that a creditor should seek to resolve *any* ambiguities, regardless of how slight, in view of section 1327(a) of the Code which provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a); *see e.g., In re Evans*, 30 B.R. 530, 531–32 (Bankr. 9th Cir.1983) ("An order confirming a chapter 13 plan is *res judicata* as to all justiciable issues which were or could have been decided at the confirmation hearing"). The interest of the *creditor,* in resolving ambiguities would have been especially important in the instant case in view of the fact that GMAC was *under* secured and yet sought postpetition interest (normally recoverable only when the creditor is *over* secured), and because GMAC only would receive a 50% dividend on the unsecured portion of its claim unless its contract rights were preserved. *Cf. In re Fawcett*, 758 F.2d 588, 590 (11th Cir.1985) (creditor had right to assume it would receive postpetition interest in part because debtor's Chapter 13 plan specified that it was a 100% payout plan, *and* that the IRS would be paid "in full").

We also note that GMAC's first proof of claim was ambiguous at best. Nowhere in the proof of claim is it stated that GMAC later would claim postpetition interest under the terms of the Contract. The proof of claim in fact *subtracted* the amount owed for prepetition late charges *and* the postpetition interest without any explana-

tion that those claims indeed would remain due and owing. *Cf. In re Fawcett,* 758 F.2d at 589–90 (IRS in Chapter 13 case gave notice to the debtor that it might be seeking postpetition interest *on the proof of claim itself*).[5]

The Trustee, while clarifying that GMAC is a partially secured and partially unsecured creditor and therefore eligible to collect only $18,116.22, did not acknowledge that at this juncture this Court cannot consider what GMAC "should have received" under the plan, but rather must focus upon what the parties and creditors understood the debtor's obligations to be upon confirmation of the Second Amended Plan.

Finally, the debtor, taking the defensive position and asserting that GMAC lost its opportunity to object to his plan, fails to address the fact that he himself listed the amount of GMAC's claim as $19,500.00 in the plan, which would require 36+ payments to GMAC in the amount of $534.00. Absent a limitation on the number of payments to be made to GMAC, a plain reading of the debtor's second amended plan reveals that Haynes intended to make 36 payments to the Trustee, and out of each payment $534.00 would be paid to GMAC. As noted by the Eleventh Circuit in *In re Fawcett,* generally it is the debtor's obligation when seeking the court's confirmation of a plan to specify as accurately as possible the amounts which it intends to pay the creditors. *See* 758 F.2d at 590. This obligation stems in part from Section 1325(a)(6), which provides that the court shall confirm a plan if "the debtor

will be able to make all payments under the plan and to comply with the plan[,]" as well as Section 1325(a)(3) which provides that a court shall confirm a debtor's plan if proposed in good faith. 11 U.S.C. §§ 1325(a)(6); 1325(a)(3). The debtor does not explain why he now should be allowed to pay GMAC *less* than the plan originally proposed to pay.[6] *See In re Kitchen,* 64 B.R. 452, 455 (Bankr.D.Mont.1986) (confirmation of plan is just as binding on the debtor as it is on the creditor; debtor who did not raise issue of valuation of security at confirmation hearing could not do so post-confirmation).

The critical aspect of the case at bar is that we are addressing this matter *after* the debtor's second amended plan has been confirmed, and distributions have been made. Due to the lack of activity in the case, we can only assume that the three-year plan now has been completed except for the payment of GMAC's claim.[7] We cannot at this time address the arguments that would or could have been made at the hearing on confirmation, since that time has passed.[8] In determining whether or not to allow GMAC's amended proof of claim, we are concerned primarily with the element of notice that each party had when the plan was confirmed.[9]

On the basis of the foregoing, we conclude that the debtor in filing his statement and plan gave sufficient notice to GMAC that he had, in effect, modified the contract. The debtor's plan as drafted, however, gave notice to all interested parties and this Court that GMAC would receive 36 payments of $534.00. The debtor, there-

---

**5.** The contention of GMAC that it deducted unmatured interest from the proof of claim, *see supra* note 2, does not address why the prepetition late charges were deducted.

**6.** We note here that the debtor's first and second amended plans were submitted *after* GMAC had filed its proof of claim. The debtor did not, however, attempt to limit the number of payments to GMAC in the amended plans to 34 to reflect the proof of claim total.

**7.** The debtor's first payment under the Plan was due on December 4, 1985.

**8.** In so holding, we note that we do not decide here whether GMAC would have succeeded in

preserving its contract rights under the debtor's plan.

**9.** At the hearing on the Trustee's Opposition to GMAC's Second Amended Proof of Claim, Counsel for GMAC intimated that it was very concerned about the outcome of this matter, in view of the precedent it would establish when interpreting "old" Chapter 13 plans, which did obligate the debtor to provide much information about secured claims. We decline, however, to establish as a matter of law against whom to resolve the ambiguities in a debtor's chapter 13 plan. We examine this case, and any others containing this issue on a case by case basis.

fore, having paid $18,368.52, still owes a balance of $855.48 to GMAC[10] and must pay the remaining amount due in accordance with this opinion.[11] Upon payment of the amount remaining, the lien held by GMAC upon the debtor's vehicle shall be released and GMAC shall forward the vehicle's certificate of title to the Chapter 13 Trustee.

An appropriate order shall enter.

---

10. $534.00 \times 36 = \$19,224.00$; $\$19,224.00 - \$18,368.52$ (face value of GMAC's original proof of claim) $= \$855.48$.

11. We briefly address here GMAC's argument that the amended proof of claim should be allowed in the "furtherance of justice." The cases which GMAC cites to support this contention are inapposite, in that they address situations in which a creditor never filed a formal proof of claim, and not situations in which a creditor amended his first formal proof of claim after a chapter 13 plan had been confirmed. Even assuming that the cases GMAC cites were

applicable, the primary considerations of the courts in allowing the late proofs of claim were that the creditors would be denied *any* participation in the estate unless the late proofs of claim were allowed and the estate in fact had notice of the creditors' claims, *see Fyne v. Atlas Supply Co.,* 245 F.2d 107, 108 (4th Cir.1957); *Dabney v. Addison,* 65 B.R. 348, 351 (E.D.Va. 1985), and that the debtor, creditor, and public would *not* be adversely affected by allowing the late claim because "no distribution ha[d] taken place," *Dabney v. Addison,* 65 B.R. at 352, considerations which are not present here.