**In re Edward T. RINCON and Lupita C. Rincon, Debtors.**

**Bankruptcy No. 388–38000 RCM–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

July 12, 1991.

Lori Givens, Irving, Tex., for DTCU.

Rosemary J. Zyne, Dallas, Tex., for debtor.

## MEMORANDUM OPINION ON DEBTORS' OBJECTION TO AMENDED PROOF OF CLAIM

ROBERT McGUIRE, Chief Judge.

This matter comes before the Court on the objection of Edward T. Rincon and Lupita C. Rincon ("Debtors") to an amended proof of claim filed by Dallas Teachers Credit Union ("DTCU"). A hearing was held May 23, 1991, and after arguments by counsel, the Court took the matter under advisement. For the reasons set forth herein, Debtors' objection is sustained.

*Facts*

This case presents the question of whether a secured creditor, who fails to object to the modification of a Chapter 13 plan, can amend its proof of claim to claim a deficiency, after its collateral is surrendered, pursuant to such modification, which modification would otherwise factually purport to bar such a deficiency. The facts are not substantially in dispute.

On December 30, 1988, Debtors filed a voluntary petition under Chapter 13. Subsequently, Debtors filed a Chapter 13 Plan Summary on January 12, 1989.

In the plan summary, Debtors listed DTCU as a secured creditor in the amount of $11,724.15, secured by a 1987 Ford automobile and a printer valued at $9,300 and $855.15 respectively. DTCU was also listed as an unsecured creditor in the amount of $771.92. Under the plan, DTCU was to receive $235.86 a month as payment on the Ford, and $18.16 a month as payment on the printer.

On February 15, 1989, DTCU timely filed a proof of claim in the amount of $13,210.28. Such proof of claim listed the debt as secured by a 1987 Ford and a Laser Jet printer, and also indicated DTCU's rejection of Debtors' plan. On May 10, 1989, Debtors filed a modified plan. The modified plan did not change the treatment of the debt owed DTCU. It did provide for the surrender of a 1988 Chevrolet automobile valued at $4,102. It further provided that, with respect to secured claims, any amount claimed in excess of the value of the collateral would automatically be treated as a Class 1 unsecured claim under the plan. These unsecured claims were to receive approximately 45% of their claims.

On July 19, 1989, Debtors filed a second modified plan. The only change to affect the treatment of DTCU was a decrease in the payment to Class 1 unsecured claims from 45% to 41%.

After notice to all creditors, and no objection having been filed, an order confirming Debtors' plan was entered by this Court on August 28, 1989. On September 20, 1990, Debtors filed a plan modification pursuant to 11 U.S.C. § 1329. The proposed modification called for the "surrender for value" of the Ford to DTCU. This modification appears as follows:

| Name | Class | Amount | Collateral | Value | Int. | Direct/ Per Month/ Surrender/ Pro Rata |
|------|-------|--------|-----------|-------|------|------------------------------------------|
| To (New) Dallas Teachers CU | S | 600.00 | Laser Printer | 855.15 | 10 | 18.08/39 |
| From (Old) Dallas Teachers CU | S | 855.15 | Laser Printer | 855.15 | 10 | 18.16/60 |
| To (New) Dallas Teachers CU | S | 6621.69 | '87 Ford | 6621.69 | | Surrender for value |
| From (Old) Dallas Teachers CU | S | 10869.00 | '87 Ford | 9300.00 | 10 | 235.86/60 |

This modification was not to change the dividend to allowed unsecured claims.

On October 31, 1990, this Court entered an order approving such plan modification, after all creditors adversely affected by the modification were given notice and an opportunity to object. DTCU did not file an objection to the modification.

Following the surrender of the vehicle by Debtors, DTCU settled with Debtors' insurance company for $5,580.[1] Subsequently, on December 12, 1990, DTCU filed an amended proof of claim in the amount of $7,630.28, the subject of Debtors' objection, and the matter currently before this Court. *Jurisdiction lies in this Court pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (L). Venue is proper pursuant to 28 U.S.C. § 1409.*

*Discussion*

Section 1329 of the Bankruptcy Code allows for the modification of a confirmed Chapter 13 plan. In part, § 1329 reads:

---

1. No evidence was presented as to the condition of the vehicle. Counsel for DTCU, however, characterized the car as having been "totalled".

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329. Under § 1329(b), the confirmed plan, as modified, becomes the plan for all purposes of Chapter 13. *See*, 5 *Collier on Bankruptcy* ¶ 1329.01[1][a] at p. 1329–4 (15th ed. 1991); *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989). The effect of a plan's confirmation is set forth in § 1327. That section provides:

**§ 1327. Effect of confirmation.**

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Any party in interest may object to the confirmation of the plan. 11 U.S.C. § 1324. Courts universally hold that, where a creditor does not object to confirmation, § 1327 binds the creditor to the terms set forth in the plan and further precludes collateral attack of the plan's confirmation. *Stoll v.*

*Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987); *In re Szostek*, 886 F.2d 1405 (3rd Cir.1989); *United States on Behalf of I.R.S. v. Norton*, 717 F.2d 767 (3rd Cir.1983); *Matter of Gregory*, 705 F.2d 1118 (9th Cir.1983); *Grundy Nat. Bank v. Rife*, 876 F.2d 361 (4th Cir.1989); *In re Evans*, 30 B.R. 530 (Bankr. 9th Cir. BAP 1983); *In re Glow*, 111 B.R. 209, 224 (Bankr.N.D.Ind.1990) and cases cited therein. *Cf., In re Simmons*, 765 F.2d 547 (5th Cir.1985) (Although creditor did not object to plan, statutory lien survived in Chapter 13 where debtor did not object to creditor's proof of secured claim); *In re Jock, supra*, at 77 (The modified plan has the effects described in § 1327).

Hence, the question is why, given the failure of DTCU to object to the plan modification, should the confirmation of such modified plan not bind them.

This is a question of notice; whether DTCU had notice of the proposed modification, and whether such notice was adequate to disclose the effect of the proposed modification on DTCU's secured claim. Any ambiguity in the terms of the plan modification would be construed against the draftsman of the plan, the Debtors. *In re Fawcett*, 758 F.2d 588 (11th Cir.1985); *In re Haynes*, 107 B.R. 83 (Bankr.E.D.Va.1989); *Cf., C.A. May Marine Supply Co. v. Brunswick Corp.*, 557 F.2d 1163 (5th Cir.1977). There is no ambiguity in Debtors' plan modification. Debtors listed the amount of both the secured claim and the value of the car at $6,621.69, and, under the purposed payout of the claim, the plan modification reads "Surrender for value".[2] The ordinary meaning of this phrase would lead one to believe that Debtors intended for the surrender of the car to satisfy the indebtedness to the extent of $6,621.69.

In *In re Haynes*, 107 B.R. 83 (Bankr. E.D.Va.1989), the court decided an issue

---

**2.** "Surrender for value" is not the same as "in full satisfaction of". The former suggests that the surrender of the collateral is to satisfy the indebtedness to the extent of the stated value, while the latter refers to the satisfaction of the entire debt, and would extinguish any resulting deficiency.

similar to that now before this Court. In that case, after the face value of its claim was paid, the secured creditor, GMAC, filed an amended proof of claim seeking accrued interest and prepetition late charges. The Chapter 13 Trustee objected to the amended claim. The trustee argued that GMAC, not having objected to the plan, was bound by the terms of the plan. The court found that, under the terms of the plan and the amounts GMAC was to receive, GMAC should have been on notice that its contract rights were being modified pursuant to § 1322(b)(2). As for any ambiguities in the plan, the court stated:

> ... It is obvious however, that a creditor should seek to resolve *any* ambiguities, regardless of how slight, in view of section 1327(a) of the Code which provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).... The interest of the *creditor* in resolving ambiguities would have been especially important in the instant case in view of the fact that GMAC was *under* secured and yet sought postpetition interest ... and because GMAC only would receive a 50% dividend on the unsecured portion of its claim unless its contract rights were preserved. *Cf. In re Fawcett,* 758 F.2d 588, 590 (11th Cir. 1985)....

As in *Haynes,* the creditor here should have sought to resolve any questions it had with the plan modification prior to its confirmation.

DTCU argues that, until the vehicle was surrendered, it did not know that its collateral had been damaged and that its value was substantially less than originally believed. DTCU asserts that, at the time of confirmation, it did not know the amount, if any, of the deficiency that would be realized. Thus, DTCU asserts that it is entitled to an unsecured claim in the amount of the deficiency. It cites this Court to *In re*

*Stockwell,* 33 B.R. 303 (Bankr.D.Ore.1983) and *In re Erwin,* 25 B.R. 363 (Bankr. D.Minn.1982) in support of this proposition. These cases, however, are not similar to the case at bar. In both *Stockwell* and *Erwin,* the issue of an unsecured deficiency claim arose in the context of a creditor's objection to the plan confirmation. Those courts did not consider the effect of § 1327(a).

This argument is more in the nature of a "good faith" objection to the plan's confirmation. See, *In re Jock,* 95 B.R. 75 (Bankr.M.D.Tenn.1989). In *Jock,*[3] the debtor proposed a plan modification providing for the surrender of the creditor's collateral, a car, and for any deficiency to be allowed as an unsecured claim. The creditor, a bank, objected to such modification. In the five-month period between confirmation of the original plan and the plan modification, the value of the car decreased from $3,261.73 to $500. The question before the court was whether such modification was permissible.

The bank argued that such modification would force a loss in the amount of its secured claim because of the car's depreciation over the five-month period. The court characterized this objection as one of "good faith" under § 1325(a)(3), and stated:

> The Bankruptcy Code protects the secured claim holder from abusive depreciation between confirmation and modification by applying the "good faith" test at confirmation of a modified Chapter 13 plan. 11 U.S.C.S. § 1329(b)(1). Had evidence been introduced at the hearing on confirmation of the modified plan that the debtor abused the car after February 1988, the proposed modification might be portrayed as a bad faith effort by the debtor to shift the loss caused by the debtor's misconduct to the secured claim holder. There is no such evidence.

Section 1325(a)(5) protects the present value of the allowed secured claim at the effective date of the original plan. The creditor who bargains for a stream of payments through a Chapter 13 plan that

---

**3.** *In re Jock* involved the disposition of an objection to a plan modification. Although distin- guishable from this case, its reasoning is likewise applicable to the issue raised herein.

is not sufficient to protect the creditor from loss in value of its underlying collateral has failed to assert its rights at confirmation.

*In re Jock,* at 78 [footnote omitted]. The court found the proposed plan modification permissible.

■ The question of good faith in proposing the plan modification is one that is more appropriately brought as an objection to the modification. As such, it is not now before this Court for determination.

■ Thus, by not objecting to confirmation of the modified plan, DTCU is bound by the terms of that plan. The amended proof of claim filed on behalf of DTCU is, in reality, an objection to the plan modification itself. Now that the modified plan is confirmed, its terms are binding on DTCU.[4]

■ DTCU argues that it is entitled to an unsecured deficiency claim pursuant to § 506(a) for the difference between the amount set forth in its original proof of claim and the amount recovered from Debtors' insurance company, as opposed to the $6,621.69 in the modification. This Court does not agree for the reasons previously stated. The factual status of plan payments is apparently as follows. If such recitations are factually inaccurate, same should be brought to the Court's attention by appropriate motion, if the disagreement cannot be solved by stipulation.

When DTCU filed its original proof of claim in the amount of $13,210.28, such claim was deemed allowed since no objection was filed. *See, In re Simmons,* 765 F.2d 547, 551–553 (5th Cir.1985). At confirmation of Debtors' original plan, and pursuant to § 506(a), Debtors valued the collateral securing the DTCU claim, both the car and printer, at $10,155.15. *See, United Savings Assn. v. Timbers of Inwood For-*

*est,* 484 U.S. 365, 372, 108 S.Ct. 626, 630–31, 98 L.Ed.2d 740 (1988) ("The phrase, 'value of such creditor's interest' in § 506(a) means 'value of the collateral.' "). Thus, for purposes of the original plan, DTCU was secured to the extent of $10,-155.15 and was entitled to an unsecured claim of $3,055.13.[5]

Prior to the modification, a total of $4,717.20 [6] should have been paid on that portion of the debt secured by the car.

Further, DTCU received payments made on that portion of the debt secured by the printer. This amount should equal $363.20. Likewise, DTCU retained its secured interest in the printer.

■ The terms of the original confirmed plan are likewise binding on Debtors. 11 U.S.C. § 1327(a). That plan provided monthly payments to DTCU in the amount of $235.86 until the car was surrendered and forty-one percent dividend on unsecured claims. If any of those amounts have not been paid, they remain due and owing through the plan as originally confirmed. *In re Jock,* at 78.[7]

Debtors' objection to the amended proof of claim filed by DTCU is hereby sustained.

---

**4.** This opinion should not be taken as an indication on how the Court would have ruled on a Rule 60(b) motion (Bankruptcy Rule 9024) supported by an evidentiary record. *See, In re Gonzalez,* 73 B.R. 754 (N.D.Ill.1987).

**5.** No objection was filed by DTCU complaining of the value given its collateral. Thus, they are bound by that valuation.

**6.** Under the original plan, payments were to start February 13, 1989. The plan modification was filed September 20, 1990. Thus, plan payments for twenty months should have been made prior to the filing of the plan modification (20 × $235.86 = $4,717.20).

**7.** As the record currently exists, the Court cannot discern whether or not any such amounts do, in fact, remain due.