In re Vivian J. STONE, Debtor.

Bankruptcy No. 91–02952–H3–13.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 14, 1993.

Dana K. Archer, Houston, TX, for debtor.

Susan Greene, Office of U.S. Atty., Houston, TX, for I.R.S.

William E. Heitkamp, Houston, TX, Trustee.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Came on for hearing the Confirmation of the Debtor's Amended (July 23, 1993) Chapter 13 Plan and Schedule J (Docket No. 52). After considering the pleadings, evidence, memoranda and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law denying without prejudice the confirmation of Debtor's Amended (July 23, 1993) Chapter 13 Plan. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any of the Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

### Findings of Fact

1. Debtor filed a voluntary Chapter 13 petition on April 11, 1991 (Docket No. 1) and her original plan on April 12, 1993 (Docket No. 4).

2. Subsequently, Debtor filed an amended plan (Docket No. 7) to which the IRS objected (Docket No. 13). Thereafter, Debtor filed two other amended plans (Docket Nos. 17, 52), the last of which is the subject of the confirmation hearing under consideration. This court notes that the IRS did not file an objection to the plan under consideration, but did appear at the hearing and presented an oral objection to its treatment under the plan as it pertained to the surrender of debtor's homestead in satisfaction of its claim.

3. In her schedules Debtor listed the IRS as both a secured and unsecured creditor for various amounts due for unpaid taxes. The Amended Schedule of Debts (Docket No. 17) lists the taxes for the year 1990 as disputed. The Amended Schedule (Docket No. 18) lists the taxes for the year 1988 as disputed.

4. The IRS filed its initial Proof of Claim on July 19, 1991. This was subsequently amended three times, with the most recent filed on October 29, 1991 (Proofs of Claim

Nos. 4, 4A, 3 and 9). Pursuant to the most recent amendment, the IRS claim is over $235,000.00 with approximately $133,000.00 being designated as a secured portion based upon a lien on Debtor's homestead for 1976 taxes, $3,900.00 as unsecured priority for 1988 taxes, $300.00 as unsecured priority for 1990 taxes and $98,000.00 as a general unsecured claim for 1976 taxes.

5. This court takes judicial notice of the Docket in this proceeding and notes that the Debtor has not filed any objections to any of the proofs of claim filed by the IRS. Thus, this court finds that there is no disputed portion of the IRS claim at the present time. 11 U.S.C. §§ 501, 502; B.R. 3001, 3007.

6. The Debtor's Amended (July 23, 1993) Chapter 13 Plan was the first plan filed by Debtor which contained provisions for Debtor to surrender her homestead and certain accounts to the IRS as the method by which she would deal with this secured creditor's claim pursuant to 11 U.S.C. § 1325(a)(5)(C). Prior plans provided that the Debtor would attempt to sell the property with the IRS retaining its lien (Docket Nos. 4, 7, 17, 52).

7. The Debtor's Amended (July 23, 1993) Chapter 13 Plan indicates that Debtor abandoned and vacated her homestead effective December 31, 1992 as payment of $207,000.00 to the IRS for the 1976 taxes. However, Debtor testified at the hearing that she physically vacated her homestead sometime in January, 1993 (Docket No. 52; Testimony of Debtor). The plan provides that the remainder of any balance owing on the 1976 taxes after surrender is to be paid by surrender of other property (an IRA and Charles Schwab Brokerage account).

8. This court finds that the physical abandonment by Debtor of the homestead and the statements in the plan indicating a surrender of the homestead and the accounts do not constitute a surrender of these properties within the meaning of § 1325(a)(5)(C).

9. The Amended Plan also indicates that no 1988 taxes to the IRS are due and that the remaining lien holders (one of which is an alleged first lien on the property) on the Debtor's homestead are to be paid out of the sale proceeds once the IRS sells the home.

It is noteworthy that the Debtor is attempting to surrender the property solely to the IRS and not to the other lienholders. Further, the plan allows an unliquidated general unsecured claim in favor of the IRS for any balance owing after applying the "above-mentioned credits."

10. This court finds that the Debtor's Amended Plan does not meet the requirements of § 1325(a)(5) in regard to all secured claims.

11. On December 11, 1991 an interim order was entered wherein the Trustee was to disburse payments made by the Debtor to all creditors except the disputed portion of the claim of the IRS (Docket No. 23).

12. To date, approximately $8,000.00 in interim disbursements have been paid to the IRS which payments were applied by the IRS to the amounts due and owing on the 1976 taxes.

13. In light of this court's finding that the Debtor's Amended Plan does not meet the requirements of § 1325(a)(5) in regard to all secured claims, it is not necessary for this court to determine the propriety of IRS' allocation of the payments under the interim order.

*Conclusions of Law*

1. 11 U.S.C. § 1325(a)(5) provides the three exclusive methods that can be utilized by a Chapter 13 debtor to deal with a secured creditor's claim. Subsection (C) allows the Debtor to surrender the property securing such claim to such holder.

2. It is preferable for property which is subject to the claims of several lienholders to be surrendered to all the various lienholders at once and for foreclosure of all liens concurrently. See *In re Toth,* 61 B.R. 160 (Bankr.N.D.Ill.1986).

3. The term "surrender" was contemplated by Congress to be a return of property and a relinquishing of possession or control to the holder of the claim. *In re Robertson,* 72 B.R. 2 (Bankr.D.Colo.1985). A debtor can not surrender collateral in a confirmed plan absent consent of the secured creditor or approval of the court. *In re*

*Rimmer,* 143 B.R. 871 (Bankr.W.D.Tex. 1992).

■ 4. An involuntary payment of taxes is any payment received as a result of a legal proceeding in which the Government is attempting to collect its delinquent taxes or file a claim therefor. See *Amos v. Commissioner,* 47 T.C. 65 (1966).

■ 5. Where a payment is made involuntarily, the IRS may apply such payment according to its existing policy and procedures. *United States v. DeBeradinis,* 395 F.Supp. 944 (D.Conn.1975), *aff'd,* 538 F.2d 315 (2d Cir.1976). The policies and procedures of the IRS dictate payments be applied to the oldest tax liability first.

6. Although this court recognizes its authority to order the IRS to ignore its own allocation rules, it is unnecessary to do so as the court has determined the plan does not adequately comply with § 1325(a)(5)(C) and thus is not confirmable in its present form.

### Conclusion

Based upon the foregoing Findings of Fact and Conclusions of Law, this court denies without prejudice the confirmation of the Debtor's Amended (July 23, 1993) Chapter 13 Plan and Schedule J (Docket No. 52) and enters a Judgment in conjunction therewith this same date.