**Robert J. GREEN and Marilyn Green, Appellants,**

v.

**Joe McKAY, Appellee.**

No. 05–10–01109–CV.

Court of Appeals of Texas, Dallas.

Aug. 2, 2012.

Rehearing Overruled Sept. 17, 2012.

Steven G. Palmer, Jeffrey Robert Sandberg, Palmer and Manuel, L.L.P., Dallas, TX, for Appellants.

Robert F. Begert, Jennifer A. King, Burford & Ryburn, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, FILLMORE, and MYERS.

## OPINION

Opinion By Justice FILLMORE.

Appellants Robert J. Green and Marilyn Green appeal the summary judgment granted in their legal malpractice case in favor of appellee Joe McKay. Appellants raise eight issues on appeal. In their first two issues, appellants contend the trial court erred by overruling their objections to unpleaded summary judgment grounds and summary judgment evidence. In their remaining issues, appellants contend the trial court erred in granting summary judgment because: McKay failed to establish, as a matter of law, appellants' "inability to come forward with causation evidence"; appellants' expert's report contains evidence of McKay's negligence, gross negligence, malice, and appellants' damages; a motion for new trial in the litigation underlying the legal malpractice lawsuit was unavailable to appellants as a result of following McKay's legal advice; McKay failed to establish, as a matter of law, appellants' "inability to come forward with damage evidence"; with regard to appellants' claims of gross negligence and malice, there is an issue of material fact whether McKay knew of the litigation underlying the legal malpractice lawsuit; and the default judgment rendered against appellants in the litigation underlying the legal malpractice lawsuit establishes appellants' damages. We affirm the trial court's judgment.

## Procedural Background

This legal malpractice action was brought by appellants against McKay after a default judgment was rendered in favor of the City of Dallas in the underlying litigation brought by the City against appellants. Appellants asserted claims against McKay for legal malpractice/negligence, breach of contract, and gross negligence, and they asserted McKay acted with malice. Appellants allege McKay failed to advise appellants to file an answer to the City's lawsuit, that they had a right to set aside the judgment in favor of the City within a certain time period after the default judgment was rendered, and to seek the help of another attorney. Appellants allege McKay's acts or omissions that constitute gross negligence occurred while McKay held a specific intent to cause substantial injury or harm to appellants.

McKay filed a no-evidence motion for summary judgment, contending there was no evidence of causation, damages, breach of contract, gross negligence, or malice. See TEX.R. CIV. P. 166a(i). McKay also filed a traditional motion for summary judgment, asserting appellants could not raise a material issue of fact that any act of McKay caused appellants injury or damages or constituted gross negligence or malice.[1] See TEX.R. CIV. P. 166a(c).

Appellants filed a response to the motions for summary judgment, objections to certain of McKay's summary judgment evidence, and objections to purportedly "unpleaded grounds" for summary judgment. Without stating the basis, the trial court granted McKay's motion for summary judgment. Appellants filed a motion for new trial. The trial court denied appellants' motion for new trial and overruled

---

1. McKay also moved for traditional summary judgment on appellants' breach of contract claim. In response to McKay's motions for summary judgment, appellants conceded their breach of contract claim fails. Appellants do not contend on appeal that the trial court erred in granting summary judgment on their breach of contract claim.

appellants' objections to McKay's summary judgment evidence and to McKay's "unpleaded grounds" for summary judgment. Appellants filed this appeal.

## Factual Background [2]

In October 2000, appellants sold two parcels of real property (the Properties) to Burdle Hill and Shawn Edwards. By warranty deed with vendor's lien, appellants entered into an executory contract, whereby Hill and Edwards agreed to purchase the Properties and appellants retained a vendor's lien. The warranty deed was recorded in the real property records of Dallas County. To secure payment of the purchase price for the Properties, Hill and Edwards executed a deed of trust.

In June 2003, Hill filed for voluntary Chapter 13 bankruptcy. Appellants were identified in the bankruptcy proceeding as secured creditors of Hill. Appellants did not appear in Hill's bankruptcy proceeding. In May 2004, Hill's Chapter 13 plan was confirmed. The treatment of the Properties in the Chapter 13 Plan was "surrender for value" to appellants.

In November 2004, the City filed the underlying litigation against Hill and Edwards, *City of Dallas v. Hill*, Cause No. 04–11301, 134th Judicial District Court, Dallas County, Texas, asserting numerous violations of the Dallas City Code and ordinances on the Properties (the code violations lawsuit). Appellants were not named as defendants when the code violations lawsuit was filed. In October 2005, after the Properties were surrendered to

appellants in Hill's bankruptcy, the City filed an amended petition naming appellants as defendants and alleging appellants were the current owners of the Properties. Appellants were served with citations in the code violations lawsuit in December 2005.[3] In 2005 and 2006, notices were served on appellants in the code violations lawsuit. Appellants did not file an answer to the lawsuit. The City moved for default judgment against appellants on January 4, 2007. Appellants were served with the City's motion for default judgment.

In February and March 2006, Dallas County and other taxing authorities filed two lawsuits against appellants and others *in rem* for delinquent *ad valorem* taxes on the Properties in *County of Dallas v. Burdle Seperal Hill*, Cause No. TX–06–30168, 101st Judicial District Court, Dallas County, Texas, and *County of Dallas v. Burdle Seperal Hill*, Cause No. TX–06–30506, 134th Judicial District Court, Dallas County, Texas. These tax lawsuits were consolidated (the tax lawsuit). Appellants did not file an answer in the tax lawsuit. On April 11, 2007, a default judgment was signed in favor of the taxing authorities in the tax lawsuit,[4] and judgment liens were filed on the Properties.[5]

On January 30, 2007, Robert Green, a building inspector employed by Dallas County, went to the office of attorney McKay. According to Robert, appellants received notices of hearings in the code violations lawsuit, including the hearing on the City's motion for default judgment

---

2. Some of the facts related below were disputed in the trial court. This factual summary presents disputed evidence in the light most favorable to appellants as nonmovants. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985) (we consider evidence in summary judgment proceeding in the light most favorable to the nonmovants).

3. In December 2006, the City nonsuited its claims against Hill and Edwards, leaving appellants as the only defendants in the code violations lawsuit.

4. A judgment nunc pro tunc in the tax lawsuit was signed on January 8, 2009.

5. The Properties were sold at foreclosure sales in 2009.

against appellants. His wife, Marilyn, told Robert he needed "to go see about this," which prompted him "on behalf of his wife and himself" to see McKay. Before speaking with McKay, Robert completed a prospective client form. On that form, Robert indicated the type of case was "Tax foreclosure on real property + ownership/transfer of title."

Robert testified in his deposition that he brought to his January 30 meeting with McKay the City's amended complaint in the code violations lawsuit naming appellants as defendants, the Motion for Default Judgment in the code violations lawsuit that stated appellants owned the Properties, the bankruptcy documents whereby Hill surrendered the Properties to the secured-creditor appellants, and documents regarding the tax lawsuit. According to Robert, "when all of this started," appellants were not the owners of the Properties and there was no liability. Robert testified appellants sold the Properties to Hill and carried a note on the debt, and Hill thereafter filed bankruptcy. Robert had seen Hill's Final Chapter 13 Plan in bankruptcy, and the bankruptcy papers Robert had in his possession indicated he was a lienholder on the Properties. It was claimed in the bankruptcy that Hill had "given [appellants] the property back"; Hill was "supposedly turning the property over" to appellants as lienholders. The City amended its code violations lawsuit pleadings naming appellants as owners of the Properties and as defendants in the lawsuit, and it appeared to Robert that he could have personal liability. Robert indicated he went to McKay's office to speak with him about the tax lawsuit and the transferring of the title to the Properties back to appellants, which resulted in their being named as defendants in the code violations lawsuit.

Appellants did not file an answer in the code violations lawsuit. According to Robert, McKay failed to advise Robert to file an answer in the code violations lawsuit. Robert testified McKay told him he did not have to do anything and "it would go away." Robert did not expect McKay to do anything for appellants after the January 30 meeting. Robert paid McKay $40.00 for the consultation.

On March 30, 2007, the trial court conducted a hearing in the code violations lawsuit on the City's Motion for Default Judgment against appellants.[6] Appellants did not appear at the hearing. On April 17, 2007, the trial court rendered judgment against appellants as owners of the Properties, awarding the City $562,275 in civil penalties.[7] The judgment states appellants were properly served with notice of the code violations lawsuit in December

6. While appellants objected in the trial court to McKay's offer of the default judgment hearing transcript and exhibits thereto as summary judgment evidence, appellants have raised no objection on appeal to the default judgment hearing transcript and exhibits.

7. This total represents assessment of a penalty of $25 per day per violation. The penalty was calculated based on the number of days from the date appellants were served with the City's First Amended Petition naming them as defendants to the date of the default judgment hearing. The City argued before the trial court at the default judgment hearing that, under Chapter 54 of the Texas Local Government Code, it would have been entitled to seek up to $1,000 per day per violation for every day the property remained in violation of a city ordinance. See Tex. Loc. Gov't Code Ann. § 54.017(b) (West 2008) (civil penalty under this section may not exceed $1,000 a day for a violation of an ordinance, except civil penalty under this section may not exceed $5,000 a day for violation of an ordinance relating to point source effluent limitations or the discharge of a pollutant, other than from a non-point source, into a sewer system owned or controlled by the municipality). According to the City, it would have been entitled to seek $22,000,000 in civil penalties.

2005, were provided a copy of the City's. Motion for Default Judgment against them on January 4, 2007, and were properly served with notice of the March 30, 2007 hearing on February 13, 2007.

McKay and Robert had no further contact until sometime after the final judgment was signed in the code violations lawsuit. According to Robert, he went to McKay's office the day he received the judgment or shortly thereafter. He gave a copy of the final judgment in the code violations lawsuit to a "staff person" in McKay's office. That staff person then took the judgment to another area in the office. Approximately five minutes later, the staff person returned with the judgment and told Robert that McKay could not help him.

## Causation

In his motion for traditional summary judgment, McKay asserted appellants could not raise a fact issue that any act by McKay caused them injury, that they suffered damages, or that McKay was grossly negligent or acted with malice. McKay also moved for no-evidence summary judgment on the basis that there was no evidence of one or more of the elements of each cause of action brought against McKay, including causation. Although appellants' statement of their issues is somewhat unclear, we construe appellants' third and fifth issues liberally in their favor to be whether the trial court erred in granting McKay's traditional or no-evidence motion for summary judgment on the element of causation.[8]

*Standards of Review*

■ We review a trial court's decision to grant or deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex.2007). The standards of review for traditional and no-evidence summary judgments are well known. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Gen. Mills Rests., Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and he is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See Tex. Wings, Inc.*, 12 S.W.3d at 832–33; Tex.R. Civ. P. 166a(i). To defeat the no-evidence summary judgment, the nonmovants are required to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on each challenged element of their claims. *See Tex. Wings, Inc.*, 12 S.W.3d at 832–33; Tex.R. Civ. P. 166a(i).

■ We consider the evidence in the light most favorable to the nonmovants. *See Nixon*, 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the nonmovants and any doubts resolved in their favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.2005). When a party moves for summary judgment on multiple grounds and the trial court's order granting summary judgment

---

8. In their third issue, appellants assert the trial court erred by granting McKay's motion for summary judgment because McKay failed to establish as a matter of law appellants' inability to come forward with evidence supporting cause-in-fact, as a "surrender for value" by a bankruptcy debtor does not automatically convey title to the secured creditor. In their fifth issue, appellants contend that due to their following McKay's legal advice, a motion for new trial was unavailable to them in the underlying code violations lawsuit. Therefore, they argue cause-in-fact was established.

does not specify the ground or grounds on which it was based, the party appealing that order must negate all possible grounds upon which the order could have been granted. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Jarvis v. Rocanville Corp.,* 298 S.W.3d 305, 313 (Tex.App.-Dallas 2009, pet. denied). We will affirm the summary judgment if any theory advanced by the movant is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

## Applicable Law

An attorney malpractice action in Texas is based on negligence. *Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989) (op. on reh'g); *Tommy Gio, Inc. v. Dunlop,* 348 S.W.3d 503, 507 (Tex.App.-Dallas 2011, pet. denied); *see also Kimleco Petroleum, Inc. v. Morrison & Shelton,* 91 S.W.3d 921, 923 (Tex.App.-Fort Worth 2002, pet. denied) (legal malpractice is based on negligence, because such claims arise from attorney's alleged failure to exercise ordinary care). To recover on a claim for legal malpractice, the plaintiff generally must establish: (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Alexander v. Turtur & Assocs., Inc.,* 146 S.W.3d 113, 117 (Tex.2004); *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex.1995); *Tommy Gio, Inc.,* 348 S.W.3d at 507; *see also Cantu v. Horany,* 195 S.W.3d 867, 873 (Tex.App.-Dallas 2006, no pet.) (in legal malpractice action, plaintiffs must establish duty, breach, causation, and damages).

When the plaintiff's allegation is that some failure on the attorney's part caused an adverse result in prior litigation, the plaintiff has the burden to prove that, but for his attorney's negligence, he would have prevailed in the underlying case. *Tommy Gio, Inc.,* 348 S.W.3d at 507;

*Schlager v. Clements,* 939 S.W.2d 183, 186–87 (Tex.App.-Houston [14th Dist.] 1996, writ denied). A plaintiff must produce evidence from which a fact finder may reasonably infer that the attorney's conduct caused the damages alleged. *Turtur & Assocs., Inc.,* 146 S.W.3d at 117. Causation requires that a plaintiff prove a meritorious defense to the underlying case. *Heath v. Herron,* 732 S.W.2d 748, 753 (Tex.App.-Houston [14th Dist.] 1987, writ denied); *see also Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.,* 48 S.W.3d 865, 875 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (op. on reh'g) (summary judgment may be proper if it is shown attorney's act or omission was not the cause of damages to the client). "A meritorious defense is one that, if proved, would cause a different result upon retrial of the case." *Heath,* 732 S.W.2d at 753 (citing *Martin v. Allman,* 668 S.W.2d 795, 797 (Tex.App.-Dallas 1984, no writ). Appellate court opinions often refer to this causation aspect of the plaintiff's burden as the "suit-within-a-suit" requirement. *Greathouse v. McConnell,* 982 S.W.2d 165, 172–73 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *see also Ballesteros v. Jones,* 985 S.W.2d 485, 489 (Tex.App.-San Antonio 1998, pet. denied) ("Because the plaintiff must establish that the underlying suit would have been won 'but for' the attorney's breach of duty, this 'suit within a suit' requirement is necessarily a component of the plaintiff's burden on cause in fact."). Although proximate cause is usually a question of fact in a legal malpractice action, it may be determined as a matter of law if the circumstances are such that reasonable minds could not arrive at a different conclusion. *Swinehart,* 48 S.W.3d at 875.

## Analysis

When a party moves for a traditional summary judgment under rule 166a(c) and a no-evidence motion for sum-

mary judgment under rule 166a(i), we first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 163 (Tex. App.-Dallas 2011, no pet.). If the nonmovant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the movant's summary judgment proof satisfied the rule 166a(c) burden. *Wyckoff*, 357 S.W.3d at 163. Accordingly, we must determine whether the trial court could have properly granted McKay's no-evidence motion for summary judgment on the element of causation. We focus initially on whether appellants established a meritorious defense to the underlying litigation. Appellants assert they had a meritorious defense to the code violations lawsuit because, contrary to the City's assertion in the code violations lawsuit, they were not owners of the Properties associated with the code violations, but were instead lienholders.

▆▆▆▆ The evidence established appellants' vendor's lien on the Properties.

The Warranty Deed provides "[t]he vendor's lien against and superior title to the [Properties] are retained for the benefit of the payee of the note until the note described is fully paid according to its terms, at which time this deed shall become absolute." [9] Appellants received notice of Hill's bankruptcy, the schedules listing the Properties and their intended treatment in the Chapter 13 Plan, and that the Properties had been surrendered for value to appellants as approved by the bankruptcy court. Considering the evidence in the light most favorable to nonmovant appellants, the documents Robert brought to McKay's office on the initial visit prior to the default judgment against appellants included the City's motion for default judgment against appellants in the code violations lawsuit and documents from Hill's Chapter 13 bankruptcy. Appellants allege they sought consultation and advice from McKay with respect to the code violations lawsuit and McKay failed to advise them to file an answer in that litigation. [10]

▆▆▆▆ Expert testimony in a legal malpractice case is generally required to es-

9. Where, as here, a vendor's lien encumbers the land, legal title does not pass to the vendee. *Flag–Redfern Oil v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex.1987). A vendee, such as Hill, owns the equitable interest along with a contract for the purchase of land. *See id.* "When a mortgagor executes a deed of trust the legal and equitable estates in the property are severed. The mortgagor retains the legal title and the mortgagee holds the equitable title. Texas has always followed this lien theory of mortgages." *Id.; see also Lusk v. Mintz*, 625 S.W.2d 774, 775 (Tex.App.-Houston [14th Dist.] 1981, no writ) (where express vendor's lien is retained to secure unpaid purchase money, superior legal title remains in the vendor until purchase money is paid).

10. Appellants assert all claims alleged by the City arose after the date of sale of the Properties to Hill and Edwards. As noted above, at the default judgment hearing, the City sought penalties from the date appellants were served with the amended petition in the code violations lawsuit to the date of the default judgment hearing. However, we note that even at the time of the sale of the Properties in 2000, code violations were referenced in the Warranty Deed, wherein it states grantee assumed and agreed to pay all indebtedness against the [Properties] arising out of prior and future City of Dallas code violations upon demand by Grantor ...," and in the Deed of Trust wherein it references prior liens arising out of "City of Dallas, Texas code violations." Notices were sent to appellants, among others, regarding a public hearing on September 23, 2002 regarding four structural code violations and one utility-related code violation on one of the Properties, and a notice following the public hearing regarding the Urban Rehabilitation Standards Board's order that the "owner, lienholder or mortgagee of the property" correct all violations.

tablish causation. *Turtur & Assocs.,* 146 S.W.3d at 119–20. At oral submission, appellants confirmed the summary judgment evidence of causation in their expert's report consisted of the expert's opinion that:

If the City of Dallas [code violations] lawsuit had been properly pleaded by [McKay] and tried on its merits, [appellants] would have been able to raise the defense that [appellants] did not own the [Properties] at one or more relevant times. This defense likely would have resulted in a different outcome, as it would have barred the [City's] code violations claims regarding the condition of the real property at issue asserted against [appellants].

In his deposition, however, appellants' expert testified he had not formed an opinion as to whether that defense would have been successful.

Section 1325 of the Bankruptcy Code governs confirmation of a Chapter 13 Plan. 11 U.S.C.A. § 1325 (West 2004 & West Supp.2012). Section 1325(a)(5) provides the three exclusive methods that can be utilized by a Chapter 13 debtor to deal with a secured creditor's claim. 11 U.S.C.A. § 1325(a)(5) (West Supp.2012). Section 1325(a)(5)(C) of the Bankruptcy Code permits a debtor to propose a plan which surrenders the property securing an allowed secured claim to the holder of that claim. 11 U.S.C.A. § 1325(a)(5)(C). "Thus, it would clearly appear that Congress contemplated the term [surrender] to mean the return and relinquishing of possession or control to the holder of a claim." *In re Robertson,* 72 B.R. 2, 4 (Bankr.D.Colo.1985). As to a secured creditor:

(i) the holder of such claim must accept the [Chapter 13] Plan, (ii) the Plan must provide that the holder of such claim retain the lien securing such claim and that the value of the property to be

distributed under the Plan on account of such claim cannot be less than the allowed amount of such claim, *or* (iii) the debtor surrenders the property securing such claim to such holder.

*In re Toth,* 61 B.R. 160, 169 (N.D.Ill.1986) (emphasis in original); *see also* 11 U.S.C. 1325(a)(5)(A), (B), & (C); *In re Rimmer,* 143 B.R. 871, 876 (Bankr.W.D.Tenn.1992) (debtor is permitted by section 1325(a)(5)(C) to satisfy a secured claim by surrender of the collateral).

"Surrender" is not defined in the Bankruptcy Code. *In re White,* 487 F.3d 199, 205 (4th Cir.2007). "At the most basic level, then, the word 'surrender' means the relinquishment of all rights in property, including the possessory right, even if such relinquishment does not always require immediate physical delivery of the property to another." *Id.* "The term 'surrender' was contemplated by Congress to be a return of the property and a relinquishing of possession or control to the holder of the claim." *In re Stone,* 166 B.R. 621, 623 (Bankr.S.D.Tex.1993); *see In re Theobald,* 218 B.R. 133, 135 (10th Cir. BAP 1998) ("surrender" under 11 U.S.C. 521 "does not require a debtor to transfer title by executing and delivering a deed in order to effectuate surrender").

"A debtor can not surrender collateral in a confirmed plan absent consent of the secured creditor or *approval of the court.*" *In re Stone,* 166 B.R. at 623 (emphasis added). Section 1325(a)(5)(C) permits the bankruptcy court to confirm a plan if "with respect to each allowed secured claim provided for by the plan … the debtor surrenders the property securing such claim to such holder…." 11 U.S.C.A. § 1325(a)(5)(C). Section 1327 provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not

such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C.A. § 1327(a) (West 2004); *see also In re Talbot*, 124 F.3d 1201, 1209 (10th Cir.1997) ("Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan."); *In re Toth*, 61 B.R. at 166 (provisions of confirmed Chapter 13 Plan bind a creditor, whether or not such creditor has objected to, accepted or rejected the Plan); *In re Carter*, 390 B.R. 648, 651 (Bankr.W.D.Mo. 2008) ("By confirming the [Chapter 13] Plan, the [bankruptcy] Court approved it. More importantly, however, by not objecting to the Plan, the [creditor] is deemed to have consented to it.").

■ Under the vendor's lien, appellants held legal title and Hill held equitable title to the Properties. Hill's Chapter 13 Plan surrendering his equitable title to the Properties to appellants was confirmed by the bankruptcy court.[11] We are unpersuaded appellants could establish the meritorious defense in the code violations lawsuit that they were not owners of the Properties. In response to McKay's no-evidence motion for summary judgment, appellants failed to raise an issue of fact that but for McKay's purported negligence, appellants would not have suffered an adverse outcome in the code violations lawsuit. *See Swinehart*, 48 S.W.3d at 875.

■ In their fifth issue, appellants assert cause-in-fact was established, because a motion for new trial was unavailable to appellants as a result of McKay's legal advice. Therefore, appellants contend in their fifth issue that there was evidence supporting "cause-in-fact," and the trial court erred in granting McKay's motion for summary judgment. Specifically, appellants contend that after the default judgment was rendered against them in the code violations lawsuit, McKay failed to advise appellants to seek to set aside the judgment or to advise appellants to seek an attorney to help them. Robert testified he went to McKay's office the second time on the day he received the default judgment in the code violations lawsuit or shortly thereafter, presented McKay's office staff with a copy of the default judgment, and was told by McKay's "staff person" that McKay could not help him.

We note that, considering the evidence in the light most favorable to the nonmovant appellants, a motion for new trial in the code violations lawsuit could have been filed within the period of the trial court's plenary power. *See* Tex.R. Civ. P. 329b. However, we agree with appellants' statement in their brief that, because appellants would not have been able to meet the elements of *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939), "a motion for new trial [in the code violations lawsuit] would have been unsuccessful."

■ A default judgment should be set aside and a new trial ordered in any case in which:

the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an

---

11. With regard to the impact of acceptance by the bankruptcy court of Hill's Chapter 13 plan, appellants' expert testified it could change his opinion, or impact his opinion, if he were told the trial court at the default judgment hearing accepted a properly certified copy of the bankruptcy order as evidence that appellants owned the property and were no longer lienholders. Appellants' expert testified that, if bankruptcy law supports the proposition that surrender for value has the effect of transferring to the lienholder the title to the property, it would be "a situation where the court would almost be compelled to hold as a matter of law that [appellants] were owners of the [Properties]."

accident; provided the motion for new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Id.* at 126. As concluded above, we disagree with appellants' contention that, because they were not owners of the Properties, they had a meritorious defense to the code violations lawsuit. Accordingly, we conclude appellants' inability to establish a meritorious defense in a motion for new trial in the code violations lawsuit was not caused by McKay's acts or omissions.

We conclude the trial court did not err in granting McKay's no-evidence motion for summary judgment on on appellants' legal malpractice claim. We resolve appellants' third and fifth issues against them.

### Appellants' Remaining Issues

Appellants contend in their first, second, fourth, sixth, and seventh issues, respectively, that the trial court erred by overruling their objection to McKay's "unpleaded summary judgment grounds"; the trial court erred by overruling their objections to McKay's summary judgment evidence; that their expert's report contains evidence of McKay's negligence, gross negligence, malice, and appellants' damages; the trial court erred in granting McKay's motion for summary judgment because McKay failed to establish, as a matter of law, the inability of appellants to come forward with evidence of damages; and the trial court erred in granting summary judgment in McKay's favor on appellants' claims of gross negligence and malice, because there is an issue of material fact as to whether McKay knew about the code violations lawsuit. In their eighth issue, appellants contend the trial court erred in granting summary judgment in

McKay's favor because the default judgment entered against them establishes their damages.

Having concluded with regard to appellants' third and fifth issues that the trial court could have properly granted summary judgment in favor of McKay, we need not reach appellants' first, second, fourth, sixth, seventh, and eighth issues. *See* TEX.R.APP. P. 47.1 (written opinion must address every issued raised and necessary to final disposition of appeal).

### Conclusion

We conclude the trial court did not err in granting summary judgment in favor of McKay. We affirm the trial court's judgment.

