**AFFIRM; and Opinion Filed July 21, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01037-CV

### ROBERT J. GREEN & MARILYN GREEN, Appellants
### V.
### CITY OF DALLAS, Appellee

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-04580-G**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Lang-Miers

Robert J. Green and Marilyn Green appeal from a summary judgment in favor of the City of Dallas on the Greens' bill of review in which they challenged a default judgment rendered against them. For the following reasons, we affirm the trial court's judgment. We issue this memorandum opinion because the issues are settled in law. TEX. R. APP. P. 47.2(a), .4.

### BACKGROUND[1]

In April 1992 the Greens purchased two apartment buildings in Dallas, one on Herrling Street and the other on Rutledge Street, and gave the seller a note for $108,000. In 1994, the properties were not in compliance with various city code provisions and the City ordered the Greens to make repairs on the Herrling property. When the repairs were not made, the City filed

---

[1] Some of these facts are taken from the appeal of a legal malpractice lawsuit filed by the Greens against an attorney. *Green v. McKay*, 376 S.W.3d 891, 895–97 (Tex. App.—Dallas 2012, pet. denied). Others are taken from the summary judgment evidence in this appeal.

a lien against the Herrling property. It also ordered the Greens to make repairs on the Rutledge property.

In July 1995 the Greens conveyed the Herrling property to Allan Rosses subject to the City's lien and order requiring repairs. In that same month, the Greens conveyed the Rutledge property to Benjamin Frierson. Four years later, Rosses defaulted on the Herrling property note, Frierson defaulted on the Rutledge property note, and the Greens purchased both properties at a trustee's sale. A year later in October 2000, the Greens sold both properties to Burdle Hill and Shawn Edwards. The warranty deed stated that as part of the consideration Hill and Edwards agreed to assume and "pay all indebtedness against the property arising out of prior and future City of Dallas code violations upon demand by Grantor to Grantee[.]" Hill and Edwards executed a note to the Greens for $160,000 and gave the Greens a deed of trust securing the note.

In 2003 Hill filed for voluntary Chapter 13 bankruptcy. The Greens filed a secured creditor's proof of claim for $160,000. Hill's final Chapter 13 plan showed that Hill surrendered the properties for value to the secured creditors.

In November 2004, the City sued Hill and Edwards in state district court for numerous violations of the City's health and safety code at the two properties. After Hill's surrender of the properties in the bankruptcy proceeding, the City amended its petition to add the Greens as defendants. The City moved for an order authorizing substituted service on the Greens, and the court signed an order authorizing substituted service "by affixing a true copy to the door of 124 Pecan Grove, Lancaster, Texas 75146." The record shows that the City's first amended petition was posted to the Greens' front door in December 2005. It also shows that Robert Green sometimes read documents he received at home and sometimes did not. He said he read them when he "first started receiving documents," but then said, "After a while I got tired of

documents coming to my house. So I just threw them in a pile." He said, "In my mind I was not a party to those documents except that I was a lienholder."

The Greens did not file an answer to the City's first amended petition, and the City moved for a default judgment against them.[2] The Greens received a copy of the motion for default judgment on January 4, 2007. Several days later, on January 30, Robert, at his wife's prompting, met with attorney Joe T. McKay about the case he described on McKay's prospective client form as "Tax foreclosure on real property + ownership/transfer of title." Robert took several documents with him to the meeting, including the City's first amended petition naming the Greens as defendants, the motion for default judgment, and the bankruptcy court documents showing Hill surrendered the properties. Robert was concerned that the City's amended petition appeared to allege personal liability against the Greens and he wanted to speak with McKay about the properties being transferred back to the Greens' names through the bankruptcy proceeding. Robert said McKay told him the Greens did not have to do anything because they no longer owned the property and the case would "disappear." He said McKay did not advise him to file an answer to the lawsuit. Robert paid McKay $40 for the consultation.

The Greens did not appear at the hearing on the City's motion for default judgment. A couple of weeks later, the court rendered a default judgment against the Greens. The judgment stated that the Greens were properly served with the lawsuit, were provided a copy of the motion for default judgment, were properly served with notice of the hearing on the motion for default judgment, but failed to appear or file an answer. It stated that the Greens are the owners of the properties and listed nineteen code violations on the Rutledge property and thirty code violations on the Herrling property. The judgment ordered the Greens to pay the City of Dallas $562,275

---

[2] The City subsequently nonsuited Hill and Edwards.

in civil penalties by May 30, 2007. The judgment also ordered the Greens to demolish the properties "so that they are blade clean" by May 30, 2007, and if they did not comply, gave the City authority to enter the property and demolish the buildings.

The Greens received a copy of the final default judgment rendered against them. Soon thereafter, Robert went to McKay's office and showed the receptionist the judgment. The receptionist took the judgment to another area of the office, returned about five minutes later, and told Robert that McKay could not help him.

The Greens sued McKay for malpractice. They argued that his negligent advice caused a default judgment to be rendered against them, that there was still time to answer the lawsuit when Robert consulted McKay, and that they could have asserted the meritorious defense of nonownership of the properties but for McKay's negligence. McKay moved for summary judgment and the trial court granted the motion. The Greens appealed the ruling to this Court arguing, among other things, they had a meritorious defense because they were not owners of the properties.

While the appeal of the malpractice lawsuit was pending in this Court, the Greens filed this petition for bill of review. They asserted (1) they had a meritorious defense because they did not own the properties and the City did not allege it complied with the statutory notice provisions; (2) they were prevented from filing an answer in the lawsuit when there was still time to file an answer because of McKay's negligent advice; and (3) their failure to answer the lawsuit was not due to their own negligence or fault because they relied on McKay's negligent advice.

The City moved for no-evidence and traditional summary judgment on all elements of the Greens' bill of review. The City argued that the Greens did not have a meritorious defense, they could not establish the City's fraud, accident, or wrongful act prevented them from defending the lawsuit, and they were collaterally estopped from asserting McKay's negligence prevented them

–4–

from answering the City's lawsuit because of the trial court's previous summary judgment in favor of McKay.

Before the trial court ruled on the City's motion for summary judgment, we issued an opinion in the appeal of the Greens' malpractice lawsuit against McKay. *Green v. McKay*, 376 S.W.3d 891 (Tex. App.—Dallas 2012, pet. denied). We said that to prevail in a legal malpractice action, the Greens had to show that but for McKay's negligence, they would have prevailed in the underlying case. *Id*. at 898. And we said that the Greens, in order to show causation, had to show they had a meritorious defense to the underlying code violation lawsuit. *Id*. We stated that the Greens asserted they had a meritorious defense to the code violation lawsuit because they were not owners of the properties and, instead, were lienholders. *Id*. We disagreed and said the evidence established that the Greens held vendor's liens on the properties when they sold the properties to Hill, that a vendor's lien meant the Greens held legal title and Hill held equitable title, that Hill surrendered his equitable title to the Greens in the bankruptcy proceeding, and that this surrender was confirmed by the bankruptcy court. *Id.* at 899–901. We addressed the meaning of "surrender" in the bankruptcy context and concluded that the Greens had not established a meritorious defense to the lawsuit on the ground that they were not owners of the properties. *Id*. at 901. We also said the Greens could have filed a motion for new trial before the trial court's plenary power expired, but that the motion would not have been successful based on the Greens' own admission that they could not have met the elements of *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939). *Id*. at 901–02. We affirmed the trial court's summary judgment in favor of McKay. *Id*. at 902.

After our opinion issued in the malpractice case, the City supplemented its summary judgment motion in the bill of review proceeding, cited our opinion, and argued that collateral estoppel precluded the Greens from relitigating whether they were owners of the properties,

whether McKay's negligence prevented them from defending the City's lawsuit, and whether the City's fraud, accident, or wrongful act prevented them from defending the lawsuit.

The Greens filed a combined motion for partial summary judgment and response to the City's summary judgment motion in which they argued that the default judgment was void because (1) the returns of service did not establish compliance with the order authorizing substituted service, (2) the City included complaints in the first amended petition over which the court did not have jurisdiction, (3) the judgment granted relief the City did not request, (4) the judgment granted more relief than was authorized by statute, and (5) Edwards was an indispensable party. The Greens also asserted that the City's collateral estoppel issue must fail because the Greens were not relying on facts litigated in the legal malpractice suit, and the City's argument that the Greens were not the owners of the properties must fail because the Chapter 13 bankruptcy did not transfer title to them. The Greens later supplemented their petition for bill of review to allege these new grounds as meritorious defenses.

The trial court granted the City's no-evidence and traditional motions for summary judgment on all claims asserted, rendered a take-nothing judgment against the Greens, and dismissed the Greens' claims with prejudice. This appeal followed.

## APPLICABLE LAW

### Bill of Review

"A bill of review is an equitable proceeding brought by a party seeking to set aside a judgment that is no longer subject to challenge by a motion for new trial or appeal." *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004). Bill of review petitioners generally must plead and prove three elements: a meritorious defense; that the petitioners were prevented from making by the fraud, accident, or wrongful act of the opposing party; without any fault or negligence of their own. However, if bill of review petitioners claim lack of service, constitutional due process

does not require them to prove the first two elements. *Caldwell*, 154 S.W.3d at 96–97. Instead, "[p]roof of non-service . . . will conclusively establish the third and only element that bill of review" petitioners are required to prove. *Id*. at 97.

### Summary Judgment

We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When a party files both a no-evidence and a traditional motion for summary judgment, we consider the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We review the summary judgment evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). If the nonmovant produced more than a scintilla of probative evidence raising a genuine issue of material fact on each element of its claim, we will reverse the no-evidence summary judgment. *Id*. More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must credit evidence favorable to the nonmovant if reasonable jurors could and disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Id*.

### DISCUSSION

The Greens argue that their due process rights were violated and the default judgment is void because the returns of service did not show strict compliance with the order authorizing substituted service. *See* TEX. R. CIV. P. 106(b)(2). They argue that the order required service of the City's first amended petition "by affixing a true copy to the door of 124 Pecan Grove, Lancaster, Texas 75146," but that the returns of service state that the citations were affixed to the "usual place of abode" and, consequently, are fatally defective.

We disagree that the returns of service did not state the City's amended petition was affixed to the door at 124 Pecan Grove. The officer's return for Robert J. Green states that the

–7–

citation was "[e]xecuted at 124 Pecan Grove, Lancaster, Texas 75146 . . . at 11:55 o'clock a.m. on the 5th day of December, 2005, by delivering to the within named Robert J. Green, by affixing a true copy of Citation with First Amended Petition attached to front door of usual place of abode along with signed copy of Order on Plaintiff's Motion for Substitute Service, attached." The officer's return for Marilyn Green is identical except for Marilyn's name. We conclude that the officer's return shows strict compliance with the order authorizing substituted service. *See* TEX. R. CIV. P. 106(b). Because the Greens failed to prove lack of service, they were not relieved of the requirement to prove all three elements of a bill of review. *Caldwell*, 154 S.W.3d at 96–97.

The City moved for no-evidence summary judgment on all three elements of the bill of review. The Greens' response to the motion did not address two of those three elements. They did not present any argument or evidence showing they were prevented from defending the lawsuit by the City's fraud, accident, or wrongful act, or that their failure to defend the lawsuit was unmixed with any fault or negligence of their own. Even if the Greens had proved a meritorious defense, they failed to raise a genuine issue of material fact on the other two elements of their bill of review. Consequently, the trial court did not err by granting the City's no-evidence motion for summary judgment.

## CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

131037F.P05

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROBERT J. GREEN AND MARILYN
GREEN, Appellants

No. 05-13-01037-CV        V.

CITY OF DALLAS, Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-04580-G.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee City of Dallas recover its costs of this appeal from appellants Robert J. Green and Marilyn Green.


Judgment entered this 21st day of July, 2014.